RAYMOND D. HALSEY, Respondent, *v.* THE NEW YORK SOCIETY FOR THE SUPPRESSION OF VICE, Appellant.

Malicious prosecution — when probable cause question for jury — indecent literature — when book is of such character as to justify belief that sale is violation of Penal Law a question for jury.

1. In an action for malicious prosecution one of the elements of the plaintiff's case is lack of probable cause. Whether or not this fact has been established may be for the jury to determine. Or it may become a question of law for the court. It is for the jury either when the circumstances upon which the answer depends are disputed or where conflicting inferences may fairly be drawn from them.

2. Whether a book, the work of a great author, written in admirable style, which has become a part of classical literature and which has been widely sold but which contains many indecent paragraphs, is of such a character as to justify the reasonable belief that its sale was a violation of section 1141 of the Penal Law, is a question for and properly submitted to the jury in an action for malicious prosecution arising from an arrest and prosecution for the sale of such book.

3. An instruction to the jury that malice is to be presumed if there was no probable cause for the prosecution is not an accurate statement of the law. Under such circumstances malice may be presumed. It is not an inference which the jury is required to draw.

*Halsey* v. *N. Y. Society for Suppression of Vice*, 194 App. Div. 961, affirmed.

(Argued March 13, 1922; decided July 12, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 28, 1920, affirming a judgment in favor of plaintiff entered upon a verdict.

*William C. Beecher* for appellant. The " Memoirs of Mademoiselle de Maupin " is a lewd, lascivious, indecent and obscene publication. If so, then there was probable cause for plaintiff's arrest and prosecution. (*People* v. *Muller,* 32 Hun, 209; *People* v. *Doris,* 14 App. Div. 117.) There was ample probable cause for plaintiff's arrest. (*Schultz* v. *Gen. Chem. Co.,* 190 N. Y. 276.) Even if the book were considered to be a standard literary work that would not excuse its publication, if in fact it was lewd, lascivious and indecent by its suggestions and descriptions. (*Regina* v. *Hecklin,* 3 Eng. L. R. Q. B. 43; *U. S.* v. *Bennett,* 16 Blatchf. 338.)

*Edwin F. Valentine* and *Sherwood O. Chichester* for respondent. The question of probable cause was properly submitted to the jury and their finding of a lack of probable cause is amply supported by the evidence. (*Burns* v. *Wilkinson,* 228 N. Y. 113; *Grew* v. *Mountain Home Tel. Co.,* 192 App. Div. 863; *Cassidy* v. *Uhlmann,* 170 N. Y. 505.) The book, " Mademoiselle de Maupin," is not an indecent and obscene publication, but is a standard literary work and its sale did not violate section 1141 of the Penal Law. (Stephen's Dig. of Crim. Law, 105; 3 Whart. Crim. Law [11th ed.], 2125; *Matter of Worthington,* 30 N. Y. Supp. 361; *St. Hubert Guild* v. *Quinn,* 64 Misc. Rep. 337; *People* v. *Eastman,* 188 N. Y. 478; *People* v. *Brainerd,* 192 App. Div. 816.)

ANDREWS, J. On November 17, 1917, in the city of New York, the plaintiff sold to an agent of the defendant, one Sumner, an English translation of " Mademoiselle de Maupin." Mr. Sumner submitted the book to City

Magistrate House who, however, took no action. He then on November 22d presented a marked copy to Magistrate Simms with a letter calling attention to certain pages which he thought deserved examination. On the 28th he also presented a verified complaint to this magistrate charging that the book was obscene and indecent, referring not only to the marked pages but to the entire work. Thereupon an order was issued stating that it appeared "from the within depositions and statements that the crime therein mentioned has been committed" and holding the plaintiff to answer. The plaintiff was arrested at the direction of Sumner and arraigned. He waived examination, was held for the action of the Court of Special Sessions, tried and acquitted. The record of that trial is not before us, but it was conceded that the copy of "Mademoiselle de Maupin" had been sold by the plaintiff and the acquittal was for the reason, apparently, that the book was not obscene or indecent. This action to recover damages for malicious prosecution was then begun. At the close of the evidence the case was submitted to the jury which found a verdict for the plaintiff. The Appellate Division has affirmed the judgment entered thereon.

The entire book was offered in evidence. We are asked to say from its bare perusal that probable cause existed for the belief on the part of Sumner that the plaintiff was guilty by its sale of a violation of section 1141 of the Penal Law.

In an action for malicious prosecution one of the elements of the plaintiff's case is lack of probable cause. Whether or not this fact has been established may be for the jury to determine. Or it may become a question of law for the court. It is for the jury either when the circumstances upon which the answer depends are disputed or where conflicting inferences may fairly be drawn from them. (*Burns* v. *Wilkinson*, 228 N. Y. 113; *Galley* v. *Brennan*, 216 N. Y. 118.)

Theophile Gautier is conceded to be among the greatest

French writers of the nineteenth century. When some
of his earlier works were submitted to Sainte-Beuve, that
distinguished critic was astonished by the variety and
richness of his expression. Henry James refers to him as
a man of genius (North American Review, April, 1873).
Arthur Symons (Studies in Prose and Verse), George Saints-
bury (A Short History of French Literature), James Breck
Perkins (Atlantic Monthly, March, 1887) all speak of him
with admiration. They tell of his command of style, his
poetical imagery, his artistic conceptions, his indescribable
charm, his high and probably permanent place in French
literature. They say that in many respects he resembles
Thackeray.

This was the man who in 1836 published " Mademoiselle
de Maupin." It is a book of over four hundred pages.
The moment it was issued it excited the criticism of many,
but not all of the great Frenchmen of the day. It has
since become a part of French literature. No review of
French writers of the last one hundred years fails to
comment upon it. With the author's felicitous style, it
contains passages of purity and beauty. It seems to be
largely a protest against what the author, we believe mis-
takenly, regards as the prudery of newspaper criticism. It
contains many paragraphs, however, which taken by
themselves are undoubtedly vulgar and indecent.

No work may be judged from a selection of such
paragraphs alone. Printed by themselves they might,
as a matter of law, come within the prohibition of the
statute. So might a similar selection from Aristophanes
or Chaucer or Boccaccio or even from the Bible. The
book, however, must be considered broadly as a whole.
So considered, critical opinion is divided. Some critics,
while admitting that the novel has been much
admired, call it both " pornographic and dull." (The
Nation, Nov. 2, 1893.) Mr. Perkins writes that " there
is much in Mademoiselle de Maupin that is unpleasant,
and is saved only by beauty of expression from being vul-

gar.   Though Gautier's style reached in this novel its full
perfection, it is far from his best work and it is unfortunate
that it is probably the one best known."   An article in
the June, 1868, issue of the Atlantic Monthly says that
this is Gautier's representative romance.   James calls it
his one disagreeable performance but " in certain lights
the book is almost ludicrously innocent, and we are at
a loss what to think of those critics who either hailed
or denounced it as a serious profession of faith."   Finally
in " A Century of French Fiction," Benjamin W. Wells,
professor of modern languages in the University of the
South, says: " Mademoiselle de Maupin is an exquisite work
of art, but it spurns the conventions of received morality
with a contempt that was to close the Academy to Gautier
forever.   With a springboard of fact in the seventeenth
century to start from, he conceives a wealthy and energetic
girl of twenty, freed from domestic restraints and resolved
to acquire, by mingling as man among men, more
knowledge of the other sex than the conventions of social
intercourse would admit.   He transfers the adventures
from the real world to a sort of forest of Arden, where
the Rosalind of Shakspere might meet a Watteau shep-
herdess and a melancholy Jacques.   Thus he helps us
over the instinctive repulsion that we feel for the situation,
and gives a purely artistic interest to the self-revelation
that. comes to his heroine and to Albert from their pro-
longed association.   Various forms of love reaching out
for an unattainable ideal occupy the body of the book,
and when once the actors learn to know themselves and
each other Gautier parts them forever.   In its ethics
the book is opposed to the professed morality of nearly
all, and doubtless to the real morality of most, but as
Sainte-Beuve said of it:  ' Every physician of the soul,
every moralist, should have it on some back shelf of his
library,' and those who, like Mithridates, no longer react
to such poisons will find in Mlle. de Maupin much food
for the purest literary enjoyment."

We have quoted estimates of the book as showing the manner in which it affects different minds. The conflict among the members of this court itself points a finger at the dangers of a censorship entrusted to men of one profession, of like education and similar surroundings. Far better than we, is a jury drawn from those of varied experiences, engaged in various occupations, in close touch with the currents of public feeling, fitted to say whether the defendant had reasonable ground to believe that a book such as this was obscene or indecent. Here is the work of a great author, written in admirable style, which has become a part of classical literature. We may take judicial notice that it has been widely sold, separately and as a part of every collection of the works of Gautier. It has excited admiration as well as opposition. We know that a book merely obscene soon dies. Many a Roman poet wrote a Metamorphoses. Ovid survives. So this book also has lived for a hundred years.

On the other hand, it does contain indecent paragraphs. We are dealing too with a translation where the charm of style may be attenuated. It is possible that the morality of New York city to-day may be on a higher plane than that of Paris in 1836 — that there is less vice, less crime. We hope so. We admit freely that a book may be thoroughly indecent, no matter how great the author or how fascinating the style. It is also true that well-known writers have committed crimes, yet it is difficult to trace the connection between this fact and the question we are called upon to decide. Doctor Dodd was hanged for forgery, yet his sermons were not indecent. Oscar Wilde was convicted of personal wrongdoing and confined in Reading gaol. It does not follow that all his plays are obscene. It is also true that the work before us bears the name of no publisher. That the house which issued it was ashamed of its act is an inference not perhaps justified by any evidence before us.

Regarding all these circumstances, so far as they are at all material, we believe it is for the jury, not for us, to draw the conclusion that must be drawn. Was the book as a whole of a character to justify the reasonable belief that its sale was a violation of the Penal Law? The jury has said that it was not. We cannot say as a matter of law that they might not reach this decision. We hold that the question of probable cause was properly submitted to them.

We have examined various other questions called to our attention. The jury was told that malice was to be presumed if there was no probable cause for the prosecution. This is not an accurate statement of the law. Under such circumstances malice may be presumed. It is not an inference which the jury is required to draw. (*Stewart* v. *Sonneborn,* 98 U. S. 187, 193.) The attention of the trial judge, however, was not called to this error by any exception. Nor do other exceptions as to the exclusion of evidence and as to the refusal of various requests to charge justify a reversal of the judgment appealed from.

The judgment must, therefore, be affirmed, with costs.

CRANE, J. (dissenting). Section 1141 of the Penal Law provides that a person who sells any obscene, lewd, lascivious, indecent or disgusting book is guilty of a misdemeanor.

On the 28th day of November, 1917, the defendant filed an information in the Magistrates Court of the city of New York charging the plaintiff with the violation of this section in having sold a book entitled "Mademoiselle de Maupin" by Theophile Gautier. The accused, having waived examination before the magistrate, was held for the Special Sessions where he was thereafter tried and found not guilty. He thereupon commenced this action charging this defendant with having maliciously prosecuted him, in that it caused his arrest without any

probable cause to believe him guilty of having sold an indecent book; in other words, charging the defendant with having no reasonable grounds to believe " Mademoiselle de Maupin " an indecent publication.

There have been two trials of this action. On the first trial the judge charged the jury as a matter of law that there was no probable cause to believe this book indecent.

On appeal this was reversed on the ground that probable cause in this case was a question of fact for the jury and not for the court. (*Halsey* v. *N. Y. Society for the Suppression of Vice*, 191 App. Div. 245.)

The question of probable cause, when there is no conflict in the evidence, no disputed facts, nor any doubt upon the evidence or inferences to be drawn from it, is one of law for the court, and not of fact for the jury. (*Heyne* v. *Blair*, 62 N. Y. 19; *Hazzard* v. *Flury*, 120 N. Y. 223; *Wass* v. *Stephens*, 128 N. Y. 123.)

In *Carl* v. *Ayers* (53 N. Y. 14, 17) the court, speaking through ANDREWS, J., said: " A person making a criminal accusation may act upon appearances, and if the apparent facts are such that a discreet and prudent person would be led to the belief that a crime had been committed by the person charged, he will be justified, although it turns out that he was deceived and that the party accused was innocent. Public policy requires that a person shall be protected, who in good faith and upon reasonable grounds causes an arrest upon a criminal charge, and the law will not subject him to liability therefor. But a groundless suspicion, unwarranted by the conduct of the accused, or by facts known to the accuser, when the accusation is made, will not exempt the latter from liability to an innocent person for damages for causing his arrest."

When facts and circumstances are undisputed, probable cause is a question of law for the court which it is error to submit to the jury. (*Brown* v. *Selfridge*, 224

U. S. 189, 193; *Anderson* v. *How,* 116 N. Y. 336; *Burt* v. *Smith,* 181 N. Y. 1; *Rawson* v. *Leggett,* 184 N. Y. 504.)

In *Besson* v. *Southard* (10 N. Y. 236, 240) we find the law stated as follows: " If the facts which are adduced as proof of a want of probable cause are controverted, if conflicting testimony is to be weighed, or if the credibility of witnesses is to be passed upon, the question of probable cause should go to the jury, with proper instructions as to the law. But where there is no dispute about facts, it is the duty of the court, on the trial, to apply the law to them."

As an instance where the court found on the facts that there was probable cause and dismissed the malicious prosecution complaint see *Murray* v. *Long* (1 Wend. 140). So also, in *Burlingame* v. *Burlingame* (8 Cowen's Rep. 141) where concededly there was a mistake in making the arrest. See *Driggs* v. *Burton* (44 Vt. 124); *Gilbertson* v. *Fuller* (40 Minn. 413); *Bell* v. *Atlantic C. R. R. Co.* (58 N. J. Law, 227); *Stone* v. *Crocker* (24 Pick. 81); *Bell* v. *Keeplers* (37 Kans. 64).

In *Blachford* v. *Dod* (2 B. & Ad. 179) the facts were these. An attorney was indicted for sending a threatening letter. Being acquitted he brought suit for malicious prosecution and was nonsuited. The court said: " Here the question of probable cause depends on a document coming from the plaintiff himself, viz., the letter sent and written by him to the defendant; and the only question is, whether we are justified in point of law in giving to that letter the construction that it contained a threat of charging the defendants with endeavoring to obtain goods under false pretenses. * * * I concur, therefore, in thinking that the letter, independently of the summons, showed a reasonable and probable cause." (See page 187.)

The construction of the letter and its meaning and whether from its contents there was probable cause was held to be a question of law for the court.

"It was for the judge to construe the written instrument."

If it were always for a jury to determine what reasonable men would do on undisputed facts, there would never be a question of law for the court — the rule would be meaningless.

It was for the trial court and it is now for us to say whether or not, as a matter of law, the defendant had probable cause to believe the plaintiff guilty of selling an obscene book.

At the very outset a marked distinction must be drawn. It cannot be too strongly emphasized that we are not determining whether "Mademoiselle de Maupin" be an indecent book. All we are called upon to determine is whether or not, recognizing the latitude afforded all works of literature and of art, and that tastes may differ, a reasonable, cautious and prudent man would be justified in believing that this publication was obscene and lewd, not in certain passages, but in its main purpose and construction.

When the plaintiff was charged with having violated section 1141 of the Penal Law, that is, charged with a misdemeanor, it necessarily became a question of fact for the triers of fact, Special Sessions or jury, to determine his guilt — to determine whether the book sold was indecent and immoral. (*People* v. *Eastman,* 188 N. Y. 478, 481.)

In a criminal case the questions of fact are always for the jury. In *People* v. *Muller* (96 N. Y. 408, 411) Judge ANDREWS said: "The test of an obscene book was stated in *Regina* v. *Hicklin* (L. R. 3 Q. B. 360), to be, whether the tendency of the matter charged as obscenity is to deprave or corrupt those whose minds are open to such immoral influences, and who might come into contact with it."

The Special Sessions, as the triers of fact, have found the plaintiff not guilty, that is, have found that "Mademoiselle de Maupin" was not such an indecent

1922.]            Dissenting opinion, per CRANE, J.      [234 N. Y. 1]

book as had the tendency spoken of in the *Muller* case. When it came, however, to the trial of this action another question was presented, and that was whether the defendant here and the complainant in the criminal case had reason to believe that the book had this tendency, that is — whether reasonable men would have been justified in believing the book lascivious — corrupting to morals, even though in the mind of a jury they were mistaken.

This reasoning clearly shows that the jury, or triers of fact, in a criminal case have a different question to pass upon than those disposing of the malicous prosecution case. In the latter case when the facts are all conceded, and no different inferences are to be drawn from them, probable cause is a question of law for the court. In this case we have the book. The inferences to be drawn from it are all one way. Vice and lewdness are treated as virtues.

The book was submitted to the magistrate a week before the issuance of the warrant for the plaintiff's arrest. The plaintiff appeared, waived examination, and was held for trial before the Specia Sessions. (*Schultz v. Greenwood Cemetery,* 190 N. Y. 276.)

What is probable cause? We have quoted above what this court said about it in *Carl* v. *Ayers* (*supra*) and we cannot add to it. It is such a state of facts presented to the complainant as would incline or move reasonable minded men of the present day and of this generation to believe the accused guilty of the crime charged. Would reasonable, careful, prudent men acting with caution, and environed with the conditions of life as they exist to-day, and not in some past age, be justified in believing " Mademoiselle de Maupin " a filthy and indecent book and published for no useful purpose, but simply from a desire to cater to the lowest and most sensual part of human nature?

In order to justify my conclusion that the defendant had probable cause to believe this book such an one as

mentioned in section 1141 of the Penal Law, it is not necessary to spread upon our pages all the indecent and lascivious part of this work. (*People* v. *Eastman*, *supra,* p. 481.) Some facts, however, may be mentioned to give point and direction to this inquiry. In the first place the Society for the Suppression of Vice was confronted with the fact that the publisher, whoever he was, does not put his name to the book.

The book consists of certain letters purported to be written by a young man of twenty-two as a sort of a satire on virtue and in praise of the sensual passions, adultery and fornication. It counsels vice. He tells his friend of his love for certain women, describes them, and relates the scenes leading up to immoral practices and to intercourse. To have a mistress in the eyes of this young man is the first qualification of a gentleman, and adultery to him appears to be the most innocent thing in the world. He writes: " I deem it quite a simple matter that a young girl should prostitute herself."

No doubt many books of fine literature known as standard works have passages in them which may shock the moral sensibilities of some people of this day, but they appear as expressions of the times and not to my knowledge as in praise of vice and derision of virtue. Most works, wherever prostitution appears, condemn or confess it as a vice or admit its evil effects and influences. The purport of this book seems to be to impress upon the readers that vice and voluptuousness are natural to society, are not wrongs but proper practices to be indulged in by the young. (*Tyomies Pub. Co.* v. *United States,* 211 Fed. Rep. 385.)

Theophile Gautier published Mlle. De Maupin in 1835. The people of his time condemned it, and by reason of its lasciviousness and bad taste he was forever barred from the French Academy. He acquired a reputation as a writer, but it was not because of this book. The New International Encyclopedia has this to say about

Gautier and his Mlle. De Maupin: " Theophile Gautier 1811–1872. Gautier's next book, Mlle. De Maupin (1835), a curious attempt at self-analysis, was a frank expression of Hedonism. Its art is fascinating, but it treats the fundamental postulates of morality with a contempt that closed the Academy to him for life."

In the Encyclopedia Britannica we read the following: " His first novel of any size, and in many respects his most remarkable work, was Mlle. De Maupin. Unfortunately this book while it establishes his literary reputation on an imperishable basis, was *unfitted* by its subject, and in parts by its treatment, *for general perusal*, and created even in France, a prejudice against its author which he was very far from really deserving." (Article by George Saintsbury.) (Italics mine.)

In the Encyclopedia Americana may be read: " Gautier's whole philosophy is a philosophy of paradox, his ideal of life hardly more than a picturesque viciousness. His besetting sin was a desire to say something clever and wicked to shock the Philistines (see Mlle. De Maupin). The Academy was forever closed to him."

When the people of France and Gautier's time condemned his book as being vicious and unfit for general perusal, are we going to say that the defendant in this case did not have probable cause to believe the same thing, when the translation was published in America by a publisher who was ashamed to put his name to it?

Many things have moved in the past century, and with the teachings of church, synagogue and college, we, at least, have the right to expect that the general tone of morality in America in 1922 is equal to that of France in 1835.

It may be true that Gautier's style is fascinating and his imagination rich, but neither style, imagination or learning can create a privileged class, or permit obscenity because it is dressed up in a fashion difficult to imitate or acquire.

American literature has been fairly clean. That the policy of this state is to keep it so is indicated by section 1141 of the Penal Law. The legislature has declared in this section that no obscene, lewd, lascivious or dis-gusting book shall be sold. Language could not be plainer.

If the things said by Gautier in this book of Mlle. De Maupin were stated openly and frankly in the language of the street, there would be no doubt in the minds of anybody, I take it, that the work would be lewd, vicious and indecent. The fact that the disgusting details are served up in a polished style with exquisite settings and perfumed words makes it all the more dangerous and insidious and none the less obscene and lascivious.

Gautier may have a reputation as a writer, but his reputation does not create a license for the American market.

Oscar Wilde had a great reputation for style, but went to jail just the same. Literary ability is no excuse for degeneracy.

Sufficient to say that a reading of this book convinces me that as a matter of law the Society for the Suppression of Vice had probable cause to believe the defendant, plaintiff, guilty of violating section 1141 of the Penal Law in selling this book and that the complaint in this case should have been dismissed.

HISCOCK, Ch. J., CARDOZO, POUND and McLAUGHLIN, JJ., concur with ANDREWS, J.; CRANE, J., reads dissenting opinion in which HOGAN, J., concurs.

Judgment affirmed.