## SUPREME COURT — APPELATE DIVISION — FIRST DEPARTMNT.

### May 2, 1924.

### SAM DAVIS v. FRANK W. SMITH.

(209 App. Div. 126.)

(1) MALICIOUS PROSECUTION—PLAINTIFF CHARGED WITH PETIT LARCENY WAS ACQUITTED ON GROUND THAT FACTS SHOWED THAT, IF ANY CRIME WAS COMMITTED, IT WAS FORGERY—PROSECUTION AROSE OUT OF ALLEGED ENTRY IN SALES BOOK OF DELIVERY OF ARTICLES TO DEFENDANT'S CUSTOMER—PLAINTIFF WAS DRIVER FOR DEFENDANT—PROBABLE CAUSE EXISTED.

In an action for malicious prosecution, probable cause was shown where it appears that prior to the prosecution the plaintiff was a driver for the defendant; that after he had been discharged a shortage was discovered in his account; that he was arrested on a charge of petit larceny based on an alleged false entry in his sales book of the delivery of butter to one of defendant's customers; and that he was acquitted on the charge of petit larceny on the sole ground that the crime committed, if any, was that of forgery.

(2) SAME—ERROR FOR COURT TO CHARGE JURY IN EFFECT THAT DEFENDANT WAS TRYING TO USE CRIMINAL COURTS AS COLLECTION AGENCY.

It was error for the court to charge, in effect, that the defendant in instituting the criminal prosecution against the plaintiff was endeavor-

ing to use the criminal courts as a collection agency, since there was no evidence that the defendant had endeavored to collect any money from the plaintiff and furthermore, the effect of the charge was to prejudice the jury in favor of the plaintiff against the defendant.

FINCH and MERRELL, JJ., dissent, with opinion.

APPEAL by the defendant, Frank W. Smith, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the Clerk of the county of New York on the 8th day of August, 1923, upon the verdict of a jury for $3,000, reduced by consent to $1,500, and also from an order entered in said clerk's office on the 7th day of August, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Charles C. Covmany (Edward J. Flanagan,* of counsel), for the appellant.

*Engel Brothers (J. B. Engel,* of counsel; *Isidore Schneider* with him on the brief), for the respondent.

MARTIN, J.:

The plaintiff asserts that on or about November 12, 1920, the defendant maliciously and without reasonable or probable cause, charged him before one of the city magistrates in the city of New York with the crime of larceny, in having stolen certain moneys from the defendant. At that time he was in the employ of the defendant as a driver. His duty was to deliver butter and eggs to defendant's customers and to collect therefor. On February 9, 1920, he commenced work, but was discharged during the month of May, 1920. When he entered the employment of the defendant, he was required to deposit the sum of $100 as security and to enter into an agreement that this deposit was not to be repaid until after the defendant had been given an opportunity to investigate his accounts.

Shortly after the plaintiff had been discharged, an investigation was made by defendant's inspectors, which disclosed shortages in plaintiff's account amounting to about $53. Pending further investigation, the defendant withheld the security. Plaintiff thereupon sued to recover the $100 so deposited. The investigation disclosed an alleged transaction with a Mr. Sternlieb, who did business at No. 686 Third avenue under the name of the Modern Dairy Lunch, for which alleged transaction the plaintiff was arrested; out of that arrest this action arose.

The plaintiff made an entry in his book purporting to show that he had delivered to Sternlieb on March 12, 1920, ten prints of butter at sixty-seven cents a print, amounting to six dollars and seventy cents. Sternlieb testified that this butter was never delivered to him or to the Modern Dairy Lunch.

The defendant in August, 1920, learned that the entry was false. On October 28, 1920, on advice of counsel, he went to a magistrate's court and made a complaint. Mr. Sternlieb made an affidavit at that time setting forth the facts, and on the hearing his testimony was taken before the city magistrate. The plaintiff was held for the court of special sessions, and bail was fixed at $200. Pending the procurement of bail, the plaintiff was detained for about two hours in the magistrate's court.

The plaintiff at the time of his arrest had brought an action against the defendant to recover the sum of $100, the amount deposited as security. Thereafter, on November 12, 1920, the lawyers for plaintiff and defendant met and effected a settlement of all the controversies then existing between them, and a general release was executed by the plaintiff to the defendant releasing him from all claims made by the plaintiff. Defendant paid to plaintiff the amount due and $25 in addition thereto, and performed all conditions of the release on his part to be performed.

Thereafter and on or about the 15th day of February, 1921,

the trial of the plaintiff came on before the court of special sessions. The defendant there proved the shortage in plaintiff's account, and that plaintiff never delivered the ten prints of butter to the Modern Dairy Lunch.

The court decided that the crime committed by the plaintiff was not the crime of petit larceny, but the crime of forgery, and on that sole ground the plaintiff appears to have escaped conviction, not because he was innocent of any crime but because somebody had failed to properly charge him with the crime he had committed. With proof of these facts before the jury, we must look elsewhere for the reason for this verdict. We believe that may be found in the charge of the court, for the court said: "There may be some business men who think they can start the machinery of the criminal law and then stop it when they choose, but that is not so. If a merchant desires to avail himself of the machinery of the criminal courts to aid him in his business, and prevent employees from pilfering, he has a right to do so, but he must take the consequences. If he chooses to use the criminal courts as a collection agency, he cannot stop the process of the criminal courts after he has collected, but the mere fact that he shows no disposition to go on and pursue the matter does not show malice, nor does it as I view it, throw any light on the question of probable cause. It has simply educated this defendant in this particular instance to the fact that he is liable to become a defendant in an action for malicious prosecution if he uses the machinery of the criminal law as a collection agency for his business. That is what he has already learned and experienced, and I do not see that that has much to do with us, except that it is interesting."

This charge was not only erroneous but appears to be an attempt to condemn the defendant for prosecuting a man who has committed a crime. The fact that he escaped conviction and punishment in the court of special sessions was due to an

error on the part of somebody in charging him with larceny instead of forgery. His acquittal in that court did not entitle him to recover $2,000 damages against the defendant in a civil action, or even $1,500 to which he consented to reduce the verdict.

There was no evidence in the case to warrant the assertion that the defendant in this action brought any proceedings to collect money. The only proceeding brought for the collection of money was that instituted by the plaintiff to recover the $100 which he had deposited as security.

Plaintiff owed money to defendant. Defendant owed plaintiff nothing. The court's remarks that defendant was using the criminal courts as a collection agency were not based on any evidence in the case, had no application whatever to the issues and could have no other effect than to prejudice the jury against the defendant.

Again the court charged the jury: " Mind you, you have nothing to do with teaching the defendant a lesson for starting the criminal machinery in motion, and then trying to stop it; he probably will not do it again. He has found it costs money to hire lawyers and defend himself when he does try to use the machinery of the criminal law as a collection agency; but here we get down to the question which is the issue in the case."

It would seem unnecessary to devote much time to demonstrating the fact that these unwarranted assertions would leave very little hope for a defendant in a case of malicious prosecution, even, as here, where the prosecution was meritorious and proper, a prosecution for which defendant should not have been censured, and for which on the evidence submitted he was not liable under well-settled principles of law.

Contrast the language of this charge with that used by other courts, and especially that used by this court in Macauley v. Starr, Inc. (194 App. Div. 643, 654), where Mr. Justice SMITH said: " In Newell on Malicious Prosecution (at p. 21)

the law is thus stated: ' Actions for malicious prosecution are regarded by law yith jealousy. Lord HOLT said more than two hundred years ago that they " ought not to be favored but managed with great caution." Their tendency is to discourage prosecution for crime, as they expose the prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they must be subjected to the expense of litigation, if they be not mulcted in damages.' Further, in section 14, the author says: ' Suits by which the complainant in a criminal prosecution is made liable to an action for damages, at the suit of the person complained of, are not to be favored in law, as they have a tendency to deter men who know of breaches of the law from prosecuting offenders thereby endangering the order and peace of the community.' Further, under section 15, the author says: ' While the court should not discourage actions for malicious prosecutions by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury, at the same time, all proper guard and protection should be thrown around those who, in obedience to the mandates of duty, may be compelled to originate and carry on a criminal prosecution which may from any cause terminate in favor of the accused.' "

In Anderson v. Dyer (188 App. Div. 707, 712) it is stated: " Actions for malicious prosecution require more than usual care in the trial thereof, that an injustice may not be done the defendant."

An action will not lie merely because a merchant has unsuccessfully resorted to the criminal courts to punish a wrongdoer.

Public policy favors prosecution for crime and affords such protection to the citizen causing the prosecution of another in good faith and on reasonable grounds, as is essential to

public justice, without the sacrifice of the right of the individual. An action will not lie merely because the criminal courts have been resorted to unsuccessfully.

In Heyne v. Blair (62 N. Y. 19, 22), the court said: " Probable cause, as defined in the books, is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice upon the facts within his knowledge, to believe that the person accused is guilty."

In Halsey v. N. Y. Society (234 N. Y. 1), the court said: " In an action for malicious prosecution one of the elements of plaintiff's case is lack of probable cause. Whether or not this fact has been established may be for the jury to determine. Or it may become a question of law for the court. It is for the jury either when the circumstances upon which the answer depends are disputed or where conflicting inferences may fairly be drawn from them."

In this case there was not only evidence of probable cause, but it was apparent that the prosecution was meritorious.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Dowling and Smith, JJ., concur; Merrell and Finch, JJ., dissent.

Finch, J. (dissenting):

Plaintiff was employed as a driver by the defendant to deliver butter and eggs over a route and collect therefor. He deposited with the defendant $100 as security against shortages. After working a few weeks the plaintiff absented himself because of illness, and was discharged. He demanded the return of the $100 deposited, but the defendant claimed the right under the contract of employment to hold same for thirty days, and subsequently claimed the right to deduct

some $53 on account of alleged shortages in plaintiff's accounts. The plaintiff sued the defendant to recover said $100, and during the pendency of said suit the defendant caused the plaintiff to be arrested for petit larceny, upon the charge of having stolen butter of the value of $6.70. The plaintiff was held for two hours, admitted to bail, and subsequently acquitted at sepecial sessions. The following is submitted by the defendant as the record of the disposition of the case at special sessions: "Defendant's Counsel: I move to dismiss. Justice Herbert: Let us see if we understand this. This man's own testimony here is that when this entry was made by the defendant he virtually said to Mr. Smith, ' I delivered ten prints of butter to Modern Lunch, for which you will please charge me $6.70,' and Mr. Smith proceeded immediately to charge this gentleman with $6.70. Now, he was a terrible liar, he never delivered ten prints of butter to this Modern Lunch. Defendant's Counsel: They claim he deliberately lied when he said he delivered ten prints of butter, but if he said to Smith, ' You charge my account, I am responsible for it ' in other words, to steal Smith's money— Mr. Wandmaker: The crime, if any, is the crime of forgery in making false entries in that book. Defendant's Counsel: That's a different type. Justice Herbert: Now you are talking law. Defendant's Counsel: I move to dismiss, if your Honor please. The Court: Motion granted. The defendant is acquitted."

The defendant claims, first, that the foregoing does not constitute a termination of the criminal action favorable to the plaintiff herein, and, second, is proof of probable cause. The first contention obviously in untenable, as shown by the quotation from the stenographic record. In so far as the second contention is concerned, the plaintiff upon the trial of this action testified that he did not take the stand in the criminal action, and testified further that he did in fact

deliver the butter. One Sternlieb, to whom the butter was consigned, testified in defendant's behalf that he did not receive the same, and that after March twelfth, the date when the butter was supposed to have been delivered, plaintiff never came back to his place. In rebuttal the plaintiff showed that he had been there many times subsequently, and that on March twenty-third he collected money from Sternlieb. He also testified that in taking over the route he called the defendant's attention to the fact that customers were complaining of discrepancies in their accounts; and there was a shortage of fifty-three dollars in the accounts of his predecesor on the route; but that the defendant made light of it and told him not to mind the books.

The issue of probable cause was with the consent of both parties submitted to the jury; and it cannot be said that their finding on this issue is against the weight of evidence. Passing the fact that the parties acquiesced in such submission, it is clear that under the circumstances of the case at bar the issue was properly for the jury. As was said in Halsey v. N. Y. Society (24 N. Y. 1): "It [whether or not probable cause exists] is for the jury either when the circumstances upon which the answer depends are disputed or where conflicting inferences may fairly be drawn from them."

By agreement of counsel at the trial, a release given by the plaintiff in settlement of the civil suit and which plaintiff contended did not affect this action, was received in evidence in mitigation of damages only. This disposed of any question raised by the release as a bar.

In so far as any error is complained of arising from the charge of the court, not only does a reading of the whole charge show due protection of the rights of the defendant, but a complete answer is that the defendant made no complaint at the time and cannot now be heard to complain after he has speculated upon the verdict of the jury and lost. The error,

if any, was not such as a court can set aside of its own motion, and no objection and execption was taken by the defendant.

The judgment and order should be affirmed, with costs.

MERRELL, J., concurs.

Judgment and order revised and new trial ordered, with costs to appellant to abide the event.