THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of HARRY KAHAN, Complainant, *v.* ABRAHAM S. JAFFE, Defendant.*

City Magistrates' Court of New York, Borough of Manhattan, Yorkville Court, March 20, 1942.

*Frank S. Hogan, District Attorney [David Du Vivier of counsel],* for the People.

* There has since been a conviction and as a result several arrests have been made and cases are pending.

*Schacter, Paris, Goldman & Ellison* [*Samuel Schacter* of counsel], for the defendant.

MAHONEY, C. M.   The defendant is charged with violation of section 1141 of the Penal Law of the State of New York in that, among other things, he did unlawfully issue advertising matter concerning, and did sell certain obscene, lewd, lascivious and indecent phonograph records.

It was stipulated that the defendant did deliver to the People's witness three pieces of printed advertising matter respecting phonograph records for sale by the defendant (exhibits in the case), and did sell to the said witness two phonograph discs with the recordings of four songs, for which the said witness paid.

Motion to dismiss the complaint is made by the defendant at the close of the People's case.   The contentions of the defendant are: (a) that the information is insufficient as a matter of law to charge a crime: (b) that even if the facts alleged were within the prohibition of section 1141, the law was in fact not violated.

In support of these contentions he urges that the lack of precedent for the information is a cogent argument against criminality; that the statute must be strictly construed with section 1141 of the Penal Law as wholly preoccupied with and directed to the proscription of the indecent presented by way of visual image and not with speech; that the standard by which this case must be judged is " according to our time; " that the language used in the discs does not have. a double meaning, and if the advertisement so indicates, then it is false and misleading.

The advertising matter delivered to the witness describes the phonograph discs purchased by him as "real life—lustful, earthy;" as " very naughty songs with full G string dance orchestras."

The additional advertising material in evidence respecting other phonograph records bear such statements as " he sings these naughty, naughty songs with a wink, a grin, and a laugh in each note; " " these song records are wicked, witty, naughty but nice." Included in this printed matter are pictures. of scantily attired women in various poses, a bed scene, a description of the various phonograph records and their names.   Another expression used is " their naughty, sophisticated, spicy records with plenty of oomph."

The words and expressions in the songs in the phonograph discs in evidence are replete with every-day expressions which are highly suggestive of not only sexual intercourse, but of a most repulsive form of degeneracy.   Unquestionably the words and expressions have a double meaning but are so commonly used in connection with sex relations and acts of degeneracy, as experience teaches from various types of cases which come to our courts, that I cannot

close my mind to the meaning intended, particularly when considered in connection with the advertising matter. The phonograph discs are intended for an indecent and immoral use or purpose.

Section 1141 of the Penal Law provides in part: "A person who sells, * * * distributes or shows, or offers to sell, * * * distribute, or show * * * any article or instrument of indecent, or immoral use, or purporting to be for indecent or immoral use or purpose * * * is guilty of a misdemeanor."

Section 21 of the Penal Law states: "The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof [adopting the Penal Law], but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law."

The primary purpose of section 1141 is to suppress the exploitation of smut. (*People* v. *Wendling*, 258 N. Y. 451 [1932]; *People* [*Complaint of Sumner*] v. *Miller*, 155 Misc. 446 [1935]; *Ultem Publications, Inc.*, v. *Arrow Publications, Inc.*, 166 id. 645 [1938].)

Among the definitions in Funk & Wagnall's New Standard Dictionary of the word "instrument" is: 2. "A mechanical contrivance for the production of musical sounds."

"The Penal Law is not to be strictly construed. * * * Provisions thereof should be interpreted according to the fair import of their terms, so that justice may be promoted and the objects of the law effected." It is the court's duty to give words of the Penal Law their usually accepted meaning, so that a wrongdoer shall be punished. (*People* v. *Reilly*, 255 App. Div. 109 [1938]; affd., 280 N. Y. 509.)

Thus, to limit the meaning of the word "instrument" to the indecent presented by way of visual image, and not with speech or sounds or words from a phonograph disc or any instrument or object which produces sounds or words, would constitute an unreasonable construction of the words and purpose of section 1141 of the Penal Law. Phonograph records do come within the purview of the section.

It is argued that the case must be judged according to our time and, so judged, there is no violation; and that it is a matter of judicial notice (*Halsey* v. *New York Society*, 234 N. Y. 1) that every large music shop in the United States, not to speak of the city of New York, sells the discs involved in this case. No statistics to this effect are offered. It is argued, too, that the advertising matter hereinabove referred to is false and misleading if it leads one to believe that the language in the recorded songs has a double meaning. And from the brief, "It is admittedly neither delicacy

nor nicety * * * it is comedy but not lechery." Undoubtedly the purpose of the defendant is to have this charge determined, not by the law or the code of morality or decency, but by what he would want them to be for himself and purveyors of writings, instruments or articles exploiting smut, filth, sexual relations and acts of degeneracy.

The code of morality or decency, upon which laws are based, is as old as the world itself and does not change with the seasons or the years. Although history, and the Testaments, show that at times nations, cities and groups of individuals abandoned the code and revelled in debauchery, degeneracy and crime generally, the code survived and lives with decent, law-abiding peoples to-day, everywhere, as it did in the time of Moses. It would sanction the destruction of all law to give to individuals, or groups of individuals, the privilege of having their violations of the law adjudged by standards made by themselves and labeled " our time."

The motion to dismiss the complaint is denied.