Martin Schenck, J.
There are three indictments herein, all brought pursuant to section 1141 of the Penal Law which deals with “obscene prints and articles The defendant Pocket Books, Inc., is charged with a violation of this section in connection with the novel “ The Carpetbaggers ”. The defendant Hamilton News Co., Inc., is charged under one indictment, at least as appears from the bill of particulars, with possession with intent to sell a number of copies of a magazine known as Playboy. Hamilton News Co., Inc., has also been indicted, again as appears from the bill of particulars, in connection with the distribution of the novel “ The Carpetbaggers ”.
The indictment against Pocket Books, Inc., reads as follows: “ The Grand Jury of the County of Albany, New York, by this Indictment accuses the defendant of the following crime: Violation of Section 1141 of the Penal Law of the State of New York ”.
Subsequently, pursuant to demand of the defendant, the District Attorney furnished the following bill of particulars in connection with the foregoing indictment:
“ The District Attorney of the County of Albany, New York, on behalf of the People of the State of New York for a Bill of Particulars in compliance with Section 295-h of the Code of Criminal Procedure, herein alleges:
“ That the defendant, Pocket Books, Inc. in the City and County of Albany, New York, in and about the month of May, 1962, did cause to be written, printed, published and distributed for retail sale in Albany County, New York a certain book known as ‘ The Carpetbaggers ’ containing obscene, filthy, lascivious and disgusting written matter whereof a more particular description would be offensive to this Court and improper to be spread upon the records thereof, wherefore such description is not given here, against the form of the statute in such cases made and provided and against the peace of the People of the State of New York and their dignity ”.
*1006 One of the indictments against Hamilton News Co., Inc., reads as follows:
“ The Grand Jury of the County of Albany, New York, by this Indictment accuses the defendant of the following crime:
‘ ‘ Violation of Section 1141 of the Penal Law of the State of New York
Subsequently the District Attorney filed the following bill of particulars in connection with this indictment:
“ The District Attorney of the County of Albany, New York, on behalf of the People of the State of New York, for a Bill of Particulars in compliance with Section 295-h of the Code of Criminal Procedure, herein states:
“ That the defendant on the 6th day of September, 1962, did have in its possession with intent to sell and distribute, at the premises 52 Dongan Avenue, Albany, New York, certain obscene and indecent magazines, to wit: 73 copies of the September, 1962, issue of a magazine known as ‘ Playboy ’ published by HMH Publishing Company, Inc.”.
The other indictment against Hamilton News Co., Inc., states: 11 The Grand Jury of the County of Albany, New York, by this Indictment accuses the defendant of the following crime: Violation of Section 1141 of the Penal Law of the State of New York ”.
The bill of particulars subsequently served by the District Attorney in connection with this indictment reads as follows: “ The District Attorney of the County of Albany, New York, on behalf of the People of the State of New York, for a Bill of Particulars in compliance with Section 295-h of the Code of Criminal Procedure, herein alleges:
“ That the defendant in and about the month of May, 1962 did unlawfully and wrongfully distribute in the City of Albany, New York, a certain book, magazine, publication and pamphlet, entitled and known as ‘ The Carpetbaggers ’ purported to be printed and published by Pocket Books, Inc., 630 Fifth Avenue, New York 20, New York, which said book, magazine, publication and pamphlet did then and there contain divers obscene, lewd, lascivious, filthy, indecent and disgusting printed matter whereof a more particular description would be offensive to this Court and improper to be spread upon the records thereof, wherefore such description is not given here, against the form of the statute in such case made and provided and against the peace of the People of the State of New York and their dignity ”.
At the outset it might be noted that section 1141 of the Penal Law contains two and one-half closely printed columns as it *1007 appears in Gilbert “ Criminal Code and Penal Law ” and is comprised of five separately numbered subdivisions. It sets forth numerous acts that would constitute violations and is phrased in nearly one thousand words. The defendants, among other arguments, in moving to dismiss these indictments, contend (citing People v. Berlcowitz, 14 Misc 2d 384, affd. 7 A D 2d 1031) that the short-form indictment otherwise authorized by pertinent provisions of the Code of Criminal Procedure (§ 295-b et seq.) is not applicable to section 1141 of the Penal Law. In view of the conclusions reached by the court upon the basis of other points raised in connection herewith this precise issue need not be and is not hereby passed upon.
First I will dispose of what may be termed a preliminary objection to the indictments on the part of the defendants. It would appear from the minutes of the Grand Jury that the individual Grand Jurors hearing evidence resulting in the three indictments under consideration did have sufficient time in each instance to read the respective publications. The arguments by the defendants to the effect that said publications could not have been read in full by all Grand Jurors is without merit as a legal proposition. Of course, this court cannot say as a matter of absolute fact that all the Grand Jurors read all of the publications submitted to them. Suffice to say that it appears to the satisfaction of the court that they had time to do this and that sufficient copies of the publications were supplied to them while they were in session.
We may, therefore, go directly to the question of whether these indictments, supported by the foregoing respective bills of particulars, are sufficient as a matter of law. The fact that the issue is a question of law seems to be well established. Regardless of this court’s determination as to whether the indictments are sufficient, there can be no basis for a jury trial as urged by the District Attorney. This proposition of whether section 1141 involves law and/or facts is discussed lucidly and at length in the recent case of Bunis v. Conway (17 A D 2d 207). Mr. Justice Halpebít writing for an unanimous court succinctly covers the problem as follows (p. 209): “ The question of whether a particular book is obscene within the meaning of section 1141 of the Penal Law is a question of law * * * No question of fact is involved, in the sense of a question as to what had factually occurred or what is factually proposed to be done. The content of the book is fixed and immutable. There may be different views as to whether the book comes within the condemnation of section 1141 of the Penal Law but this presents a *1008 question of law for ultimate decision by the court, depending upon the court’s determination of the meaning, scope and applicability of the statute.”
The principle that a determination as to obscenity involves a question of constitutional law for the court to decide has been expressed by the Supreme Court of the United States in the case of Roth v. United States (354 U. S. 476). This principle has been adopted by our Co art of Appeals in People v. Richmond County News (9 N Y 2d 578). These cases hold, in effect, that the prohibitions of section 1141 are applicable only to what the Supreme Court terms ‘1 hard-core pornography ’ ’. In the Richmond County News case the court specifically differentiates obscenity from the ‘ ‘ bawdy and the ribald ’ ’. The test is expressed to be whether or not the alleged obscene material depicts “ dirt for dirt’s sake ”. In this connection this court on the authority of Roth v. United States (supra); Halsey v. New York Soc. for Suppression of Vice (234 N. Y. 1) and Brown v. Kingsley Books (1 N Y 2d 177) has held “ that the obscene character of a book must be determined by viewing it broadly in its entirety. Passages extracted at random will not substantiate conviction under Section 1141 of the Penal Law”. (People v. Bantam Books, Inc., Albany County CL, July 2,1958.)
It appears, therefore, that a finding of guilt under any of these three indictments must be made by the court and can be predicated only upon proof sufficient to sustain a finding that specific acts were committed constituting clear-cut violation of one or more of the provisions of section 1141 of the Penal Law. The particular acts constituting the alleged violations of the section must be set forth either in the indictment or the bill of particulars. The facts amounting to the alleged crime, furthermore, must be subject to the criterion of obscenity as ‘1 hard-core pornography ”. None of the three indictments pass this test, even taking into consideration the respective bills of particulars which accompany them.
The indictment against Pocket Books, Inc., as detailed by the bill of particulars, alleges that the defendant “ did cause to be written, printed, published and distributed for retail sale in Albany County, New York a certain book known as ‘ The Carpetbaggers ’, containing obscene, filthy * * * written matter ”, The mere inclusion of obscene matter in a book of and by itself would be insufficient to sustain a conviction under section 1141. The bill of particulars does not allege the respect in which the section is violated with sufficient definiteness to afford the defendant knowledge as to the facts of the crime charged. The particular subsection of section 1141 alleged to be pertinent *1009 is not even stated. It would be manifestly difficult to couch an indictment in the language required by the current trend of opinions in the Supreme Court of the United States and in the Court of Appeals of this State. That, however, is insufficient reason to uphold an indictment and bill of particulars which merely refer in general terms to 4 4 obscenity ’ ’ in the language of the statute. I do not mean to infer that reference to alleged obscene matter by page and paragraph would be sufficient. It is, however, quite apparent that it was on the basis of such passages that the Grand Jury brought the indictments. A cursory scanning of the book indicates that it may fall in the category of literature described by Judge Augustus Hand in a more or less classic opinion in the case of United States v. One Book Entitled Ulysses (72 F. 2d 705). Judge Hand wrote (pp. 706-707): 44 That numerous long passages in Ulysses contain matter that is obscene under any fair definition of the word cannot be gainsaid; yet they are relevant to the purpose of depicting the thoughts of the characters and are introduced to give meaning to the whole, rather than to promote lust or portray filth for its own sake. The net effect even of portions most open to attack, such as the closing monologue of the wife of Leopold Bloom, is pitiful and tragic, rather than lustful. The book depicts the souls of men and women that are by turns bewildered and keenly apprehensive, sordid and aspiring, ugly and beautiful, hateful and loving. In the end one feels, more than anything else, pity and sorrow for the confusion, misery and degradation of humanity. * * ® The book as a whole is not pornographic, and, while in not a few spots it is coarse, blasphemous, and obscene, it does not, in our opinion, tend to promote lust. The erotic passages are submerged in the book as a whole and have little resultant effect ”.
Whether or not under a proper indictment the People could prove that 44 The Carpetbaggers” is sufficiently distinguished from 4 4 Ulysses ” to warrant holding that it is pornographic is a question not now before me. All I am deciding for the purposes of this motion is that the indictment, even as expanded by the bill of particulars, is insufficient. From the current weight of authority, however, it would seem doubtful that44 The Carpetbaggers ” could be deemed obscene as a matter of law, which is what would be required to sustain a conviction.
With respect to the indictment against Hamilton News for possessing 73 copies of the September, 1962 issue of Playboy, 44 with intent to sell and distribute ” the same, the reason for the dismissal of the indictment is a little different, but the same result must be reached. It is my interpretation of the prevailing *1010 law that the distributor of a magazine could be found guilty-under section 1141 if there was a story, article, or picture therein that falls within the category of ‘ ‘ hard-core pornography ’ ’, even though the balance of the publication might be exemplary in nature. The present indictment and bill of particulars, however, does not even attempt to specify what portion of the magazine in question is alleged to be violative of section 1141 and, if so, of what portion of the section. This indictment against Hamilton News Co., Inc., must, accordingly, also be dismissed.
The other indictment against Hamilton News is based upon “ The Carpetbaggers ”. It must be dismissed for the reasons stated above in connection with the indictment against Pocket Books, Inc.
It is certainly not the intention of this court in dismissing these indictments upon the more or less technical grounds of legal insufficiency, as indicated, to condone or in any way express approval of the so-called literary material at issue. Protection of youth from exposure to some of the matter that passes for literature these days is an objective with which this court heartily concurs. I commend the efforts of the Albany Police Department in their activities in this field and I applaud the vigorous manner in which the District Attorney has taken action in this connection. Other sections of the Penal Law, however, might be a better vehicle for prosecution, especially provisions that prohibit sale and distribution of obscene material to youths. It cannot be logically argued that a book should be made unavailable to the general public merely because it contains language “tending to the corruption of the morals of youth”. The heritage of our youth must include maintenance of the principles of the First and Fourteenth Amendments as well as protection from assaults on youth’s moral fibre. Along this line, in passing upon a Michigan statute, the Supreme Court of the United States, in an opinion written by Mr. Justice Frankfurter for a unanimous court stated as follows: “ It is clear on the record that appellant was convicted because Michigan, by § 343, made it an offense for him to make available for the general reading-public (and he in fact sold to a police officer) a book that the trial judge found to have a potentially deleterious influence upon youth. The State insists that, by thus quarantining the general reading public against books not too rugged for grown men and women in order to shield juvenile innocence, it is exercising its power to promote the general welfare. Surely, this is to burn the house to roast the pig. * * * The incidence of this *1011 enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society.” (Butler v. Michigan, 352 U. S. 380, 382-384.)
The fact that “ The Carpetbaggers ” is a best seller and that Playboy has one of the largest circulations among so-called men’s magazines in America, outselling such old standards as “Popular Mechanics” and “Field and Stream”, may be a commentary upon our times.
Playboy, according to statistics apparently generally accepted in the industry, has a large circulation in the higher income bracket and better educated categories. One of the articles in the issue under consideration is by a highly respected financier reported to be one of the wealthiest men in the world. 1 ‘ Carpetbaggers ” is listed on all reputable “ best seller ” lists and is in the libraries of countless respectable homes.
The fall of the Roman Empire was preceded by dissolute moral conduct and corresponding literary tastes among the upper strata of that day’s society. Some of the old Roman plays, especially those of Plautus, closely approach the type of thing criticized by the Grand Jury in bringing in these indictments. It is possible that public sentiment as to moral values will change. It is certainly hoped that the history of the Roman Empire does not repeat itself in other respects. The fact remains, however, that public acceptance of changed standards is necessarily reflected in the views of our courts. It would seem, therefore, that regardless of how nicely indictments might be drawn with regard to the publications under consideration here, it is extremely doubtful that a conviction under section 1141 could be sustained with respect to either. It is hoped and anticipated that the vigilance of the Police Department and the District Attorney in Albany County and elsewhere throughout the State will not be deterred as the result of this opinion or similar decisions that have been noted in corresponding courts throughout the State in recent months. Where true pornography is observed it should be quashed. Where laws enacted for the protection of the morals of youth are violated prosecution should be forthcoming.
The lengthy observations made by me upon this complex subject are merely offered by way of explanation in the exercise of a court’s duty to a public that must necessarily be confused by *1012 the great welter of publicity accompanying criminal and civil litigation concerning alleged obscenity in literature, the theatre and the other arts. As stated above, the basis for the dismissal of the three indictments herein is limited to insufficiency as a matter of law.