**GRAHAM v. SQUIER, Warden.**

No. 10,192.

Circuit Court of Appeals, Ninth Circuit.

Dec. 31, 1942.

Bartlett Rummel, of Tacoma, Wash., for appellant.

J. Charles Dennis, U. S. Atty., of Tacoma, Wash., and Harry Sager, of Sumner, Wash., and Tom Durham, of Seattle, Wash., Asst. U. S. Attys., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Jack Graham filed in the United States District Court for the Western District of Washington, Southern Division, a petition for writ of habeas corpus. Upon return to an order to show cause, which order was directed to P. J. Squier, Warden, United States Penitentiary, McNeil Island, Washington, where petitioner is imprisoned, and after hearing held, the district court made findings of fact and conclusions of law and entered an order denying the petition and dismissing the action. From that order this appeal is taken. The proceeding is one in forma pauperis, the judge of the district court having certified that the petitioner is appealing in good faith.

Petitioner urges that he is being illegally detained at the McNeil Island Penitentiary. Briefly, the circumstances of his imprisonment are these:

Having been indicted in two counts under the Mann Act, 18 U.S.C.A. § 398, Jack Graham, who was represented by counsel of his own choice,[1] was tried by a jury in the United States District Court for the Northern District of California, Northern Division; he was found guilty of the first count only, and was thereafter, on August 29, 1941, sentenced to serve three years in a penitentiary and to pay a $1000 fine. It is by reason of that sentence that he is being incarcerated in the McNeil Island Penitentiary.

The count on which petitioner was convicted was that he had transported Wilma Graham, his wife, from California into Oregon with the intent and purpose that she should practice prostitution. In the course of proving the Government's case, and for the purpose of establishing in particular that petitioner was dependent upon his wife's earnings, the United States attorney introduced in evidence petitioner's Selective Service Questionnaire, sections thereof being marked "Confidential", and which were also designated by the Selective Service Regulations as being "Confidential". There were read to the jury from a "confidential" section statements concerning petitioner's employment status, which were to the effect that because of a heart ailment, he was not working at the time of returning the Questionnaire (December 16, 1940), and was then, and for the preceding year and a half had been, reliant upon the earnings of his wife, whom he designated as his dependent and who had been his common-law wife prior to their marriage in October, 1940. Counsel for petitioner did not object to the admission of this Questionnaire; he did not subsequently make a motion to strike it from the record; nor did he request the court to instruct the jury to disregard it. After judgment of conviction was entered, no motion for new trial was made and no appeal was taken.

Because the Questionnaire was designated as being confidential and because he was required by law to fill out and return such document under oath, petitioner contends that the use of it in the trial was equivalent to requiring defendant to testify against himself; "that even if no adequate objections were made to its introduction, the fact that reference was even made to it was error which was not cured and which deprived the defendant of his constitutional rights". He states in his brief that "The only question on appeal here is whether the defendant, or appellant here, was deprived of his constitutional rights by the introduction of the Selective Service Questionnaire, and if so, whether this is grounds for Habeas Corpus".

Generally, the function of a writ of habeas corpus is to afford petitioner a speedy and effective method of securing his release when illegally restrained of his liberty, which writ lies in all cases of il-

[1] The counsel was selected, secured, and paid for by Graham's wife, and accepted by him.

legal imprisonment by commitment, detention, or restraint, for whatever cause and under whatever pretense; and the writ goes to inquire into the cause of imprisonment. But when directed to an inquiry into the cause of imprisonment in judicial proceedings, the scope of the writ extends only to questions affecting the jurisdiction of the court and the sufficiency in point of law of the proceedings. The writ is never allowed as a substitute for an appeal from a sentence of conviction, or other remedial procedure to correct errors in the trial of a criminal case; it is an appropriate remedy only where the court was without jurisdiction in the premises, or where it lost jurisdiction during the trial, or where it exceeded its jurisdiction in passing the sentence, or where the detention has become illegal due to some subsequent omission or event. Mere errors or irregularities in a judgment or proceeding of a court under and by virtue of which a person is imprisoned, which are not of such a character as to render the proceedings void, cannot be raised on an application for a writ of habeas corpus.

In the proceeding before us it is not questioned that the trial court had jurisdiction over the subject matter of the prosecution and over the person, and further that the punishment meted out was within the power of the court. Here petitioner seeks to nullify the judgment of conviction because the introduction of the Draft Questionnaire allegedly violated the protection guaranteed by that provision of the Fifth Amendment to the Federal Constitution which declares: "nor shall [any person] be compelled in any Criminal Case to be a witness against himself".

Petitioner relies upon the case of Johnson v. Zerbst, 304 U.S. 458, 465-467, 58 S.Ct. 1019, 82 L.Ed. 1461, and upon the case of Bowen v. Johnston, 306 U.S. 19, pages 23, 24, 59 S.Ct. 442, page 444, 83 L. Ed. 455, from which he quotes:

"Where the District Court has jurisdiction of the person and the subject matter in a criminal prosecution, the writ of habeas corpus cannot be used as a writ of error. The judgment of conviction is not subject to collateral attack. [Cases cited.] The scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose judgment of conviction is challenged. [Cases cited.] But if it be found that the court had no juris-

diction to try the petitioner, *or that in its proceedings his constitutional rights have been denied,* the remedy of habeas corpus is available. Ex parte Lange, 18 Wall. 163, 178, 21 L.Ed. 872; Ex parte Crow Dog, 109 U.S. 556, 572, 3 S.Ct. 396, 406, 27 L. Ed. 1030; In re Snow, 120 U.S. 274, 285, 7 S.Ct. 556, 561, 30 L.Ed. 658; In re Coy, 127 U.S. 731, 751, 758, 8 S.Ct. 1263, 1268, 1272, 32 L.Ed. 274; Hans Nielsen, Petitioner, 131 U.S. 176, 182, 9 S.Ct. 672, 674, 33 L.Ed. 118; In re Bonner, 151 U.S. 242, 257, 14 S.Ct. 323, 325, 38 L.Ed. 149; Moore v. Dempsey, 261 U.S. 86, 91, 43 S. Ct. 265, 266, 67 L.Ed. 543; Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461."

In the above quotation the clause italicized is stressed by petitioner, and is particularly relied upon by him because, as hereinbefore stated, it is his contention that at the trial one of his constitutional rights—the guaranty against self-incrimination, as declared by the Fifth Amendment—had been transgressed. Petitioner urges that this Bowen case "holds that the writ is available when constitutional rights have been denied as well as when jurisdiction is lacking".

The language of the emphasized clause in the excerpt from the Bowen case, considered in and of itself and isolated from the text of which it is a part, might seem to indicate, as petitioner would have it, that whenever *any* constitutional right is infringed in a criminal trial, the accused, if he be convicted, may thereafter nullify the judgment by bringing a habeas corpus proceeding. But taking that clause, as is obviously necessary in order to arrive at the true meaning, in conjunction with the statements of the Supreme Court contained in the very same paragraph, and which express the unvaried rule that a criminal action may be collaterally attacked on *jurisdictional* grounds alone, one sees immediately that the Supreme Court intended no more than that the writ of habeas corpus should issue only in those cases where the denial of the constitutional rights of the accused operated to prevent the trial court from acquiring jurisdiction over the person of the accused, or if jurisdiction did exist at the commencement of the trial, operated to destroy that jurisdiction at some stage during the progress thereof. That this interpretation of the Supreme Court's language is correct will appear from an examination of the sustaining authorities,

which are cited in the case immediately following the clause under discussion.

■ Recurring now to the case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the last of that list of authorities set out in the Bowen case, 306 U.S. at page 24, 59 S.Ct. 442, 83 L.Ed. 455, we point out that in that case, too, the writ of habeas corpus was granted because the proceedings in the court of conviction were void for jurisdictional reasons. What occurred is that the trial court had been divested of its jurisdiction, which existed at the commencement of the trial, by neglecting to complete the court (in compliance with the Sixth Amendment) by furnishing counsel for an accused who had not intelligently waived his constitutional right to assistance of counsel. The Supreme Court had this to say (pages 467, 468, of 304 U. S., page 1024 of 58 S.Ct., 82 L.Ed. 1461):

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus. * * *"

It being assumed, arguendo, that petitioner's Selective Service Questionnaire was a privileged document, coming with-

in the protection of the Fifth Amendment, the solution of the case here resolves into a determination of whether or not, under the circumstances, the trial court by the admission into evidence of said Questionnaire ipso facto et eo instante became ousted of its jurisdiction.

Petitioner calls to our attention the following statement, excerpted from 29 Corpus Juris at page 47:

"But a conviction upon evidence secured by violation of defendant's constitutional rights, may afford ground for the writ."

That statement is supported by the single case of In re Horschler, 116 Misc. 243, 190 N.Y.S. 355.[2] There the New York court held that when a defendant is convicted of illegally possessing liquor upon evidence secured through illegal search and seizure, he is entitled to a writ of habeas corpus. Most of the opinion in the case is devoted to ascertaining whether there had been an illegal search and seizure, and when the court arrived at the determination that such had been the case, it concluded summarily that the writ should issue, without an explication as to the purposes and functions of a writ of habeas corpus. It may be that by constitutional provision or by statutory authorization the New York courts are empowered to grant the writ under circumstances such as those existing in the Horschler case; but the matter has been decided to the contrary so far as the federal courts are concerned.

Recently, in the case of Price v. Johnston, 9 Cir., 125 F.2d 806, certiorari denied 316 U.S. 677, 62 S.Ct. 1106, 86 L.Ed. 1750, rehearing denied 316 U.S. 712, 62 S.Ct. 1289, 86 L.Ed. 1777, there was presented to this court the question whether a writ of habeas corpus should issue to release Price, the petitioner there, from prison because there was admitted at the trial of conviction evidence which had been obtained allegedly through illegal search and seizure, it being contended, inter alia, that the admission of the said evidence, over objection, violated the Fourth Amendment and the Fifth Amendment, in that Price was compelled to be a witness against himself. At page 811 of 125 F.2d, it was said:

"When the allegedly illegally procured evidence was offered during the course of the prosecution, and objection was made thereto, it was the duty and the right of

---

[2] An extensive examination of texts, encyclopedias, and digests reveals no other like case.

the trial judge to rule thereon. The right of a trial judge to make a ruling during the course of a trial carries with it the possibility of ruling wrongly as well as correctly. It is absurd to assert that the jurisdiction of the court hinges upon the mere right or wrong of a ruling on the admissibility of evidence during the course of a trial; that if the court's ruling on an objection made be correct, the court continues to retain jurisdiction, but if it errs, the entire proceeding is void. If the trial court erred, and the error was prejudicial, reversal would follow on appeal, as in other prejudicial error, but the mistake would not thereby deprive the trial court of jurisdiction so that the convicted person, thereafter whenever he saw fit, could launch a collateral attack upon a judgment, valid upon its face. * * * "

The reasoning in the Price case is unquestionably applicable here and disposes of petitioner's contention that, irrespective of the question of jurisdiction, the writ of habeas corpus is available whenever constitutional rights have been infringed in a criminal prosecution.

■ We call attention to the fact that in the Price case the court proceeded upon the basis that the evidence was received over objection duly made; in the trial at which petitioner here was convicted no objection was made, and the circumstances were such that it can be concluded, with reason, that petitioner waived any available objections on constitutional grounds. From statements made during the trial by petitioner's counsel it is clear that he was aware of the "confidential" nature of the Questionnaire, and it seems very plausible that he was desirous that the document be received in evidence because of certain declarations contained therein—declarations as to the poor health of petitioner—which he may have thought would tend to help his case by appealing to the sympathy of the jury; and it will be recalled that the jury refused to convict him on one of the two counts.[3] Petitioner selected his counsel, a duly authorized attorney at law, and it is presumed that he acted advisedly in the conduct of the trial. Whether or no any right to object to the reception of the Questionnaire in evidence was waived we really need not here decide; for if there was prejudicial error, the sole remedies which were open to petitioner were by way of motion for new trial and, if that proved unavailing, then by appeal, which latter remedy is always available if pursued in due time. Those remedies are not only adequate, but are in keeping with regular and orderly procedure.

The order of dismissal entered by the district court is affirmed.

---

[3] At the close of the hearing on the petition in the court below, the district judge, in an oral opinion, made the following remarks relative to the admission of the Questionnaire in evidence:

"When the question arose in the first instance his attorney expressed a desire to know more about the matter intended to be offered so that he could make an objection. After he was informed he made no objection. In fact, while he did not specifically ask that the particular matter here objected to be introduced the inference from his language is that he was soliciting its introduction. He never said anything at all by way of objecting to the court until it was all in and the jury had heard it all. Then he made no actual objection to the court and made no application to the court to strike it. He did not ask the court to instruct the jury to disregard it. I am not finding any fault with that attorney. We do not know what other evidence was in the case. We do not know what Mr. Graham's attorney had in mind. He might have decided his client had no chance of acquittal under the evidence. The questionnaire indicated that Mr. Graham was ill. His attorney may have thought that Mr. Graham would get more of a benefit from the questionnaire getting in than by being excluded. A man should not, through his attorney, allow certain evidence to be introduced without objection with the hope that it will help him, and then if the result of the jury's verdict is adverse say he did not have a fair trial. * * * I think, therefore, that Mr. Graham should be prohibited from speaking his objection to that evidence now long after he had the opportunity to find out whether the jury would be favorably or unfavorably influenced by the disclosures of the questionnaire."