*889
 
 SWAIN, P. J.
 

 The defendant, a bookseller, was convicted of violating Penal Code, section 311, subsection 3, by selling two books which were adjudged obscene. He appeals from the judgment. Although we affirm the judgment there are several points which we must discuss.
 

 I. Freedom op the Press
 

 It is now settled law that 1 ‘ obscenity is not within the area of constitutionally protected speech or press.”
 
 (Roth
 
 v.
 
 United States
 
 (1957), 354 U.S. 476, 485 [77 S.Ct. 1304, 1 L.Ed.2d 1498, 1507].) This opinion also decides the ease of
 
 Alberts
 
 v.
 
 California.
 
 The citation is the same for each case but the court sometimes refers to the Roth case and sometimes to the Alberts case. We shall do the same.
 

 II. What Is Obscenity?
 

 This definition of obscenity was adopted by this court in
 
 People
 
 v.
 
 Wepplo
 
 (1947), 78 Cal.App.2d Supp. 959, 961 [178 P.2d 853] :
 
 “A
 
 book is obscene ‘if it has a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desire. ’
 
 (Commonwealth
 
 v.
 
 Isenstadt
 
 (1945), 318 Mass. 543 [62 N.E.2d 840, 844] ; see also
 
 United States
 
 v.
 
 Dennett
 
 (1930), 39 F.2d 564, 568;
 
 Dunlop
 
 v.
 
 United States
 
 (1897), 165 U.S. 486, 501 [17 S.Ct. 375, 41 L.Ed. 799, 804].) ” This was approved by the court in
 
 Alberts
 
 v.
 
 California, supra
 
 (1957), 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498], which said, at page 1508 L.Ed. (U.S. p. 486), “In Alberts, the trial judge applied the test laid down in
 
 People
 
 v.
 
 Wepplo,
 
 78 Cal.App.2d Supp. 959 [178 P.2d 853]. ...” The judgment was affirmed. In
 
 Roth
 
 v.
 
 United States, supra,
 
 the trial judge instructed the jury, at pages 1507-1508 (U.S. p. 486): “The words ‘obscene, lewd and lascivious’ as used in the law signify that form of immorality which has relation to sexual impurity and has a tendency to excite lustful thoughts.” At page 1510 (U.S. p. 489) the court said, “Both courts used the proper definition of obscenity.”
 

 The appellant in the Alberts case contended that our Wepplo definition of obscenity is defective because it deals only with inciting lascivious thoughts or arousing lustful desires and does not require proof either that obscene material will perceptibly create a clear and present danger of antisocial conduct, or will probably induce its recipients to such conduct. At page 1508 of the L.Ed opinion (U.S. pp. 486-
 
 *890
 
 487) the court rejected that argument. On the strength of that we say contamination of a man’s mind by obscenity is as much a matter of concern to the law as contamination of his body by impure food or impure drugs.
 

 Whether a writing is obscene rmist be judged by contemporary commumty standards.
 
 In
 
 Roth
 
 v.
 
 United States, supra
 
 (1957), 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498], the court said at page 1509 (U.S. p. 489) that the standard for judging obscenity is “whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.” At page 1510 (U.S. p. 490), “ ‘The test is not whether it would arouse sexual desires or sexual impure thoughts in those comprising a particular segment of the community, the young, the immature or the highly prudish or would leave another segment, the scientific or highly educated or the so-called worldly-wise and sophisticated indifferent and unmoved. . . . The test in each case is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community.”
 

 III. Neither Opinion Evidence of So-Called Experts, nor Evidence That the Book in Question Is Found in Public Libraries nor That Other Books Equally Bad Were Being Openly Sold Is Admissible
 

 People
 
 v.
 
 Wepplo, supra
 
 (1947), 78 Cal.App.2d Supp. 959, 962, states, “We find no error in the rulings excluding evidence offered by defendants on this point. The jury were competent to decide the question of the character of the book without resort to these adventitious aids. If the book sold by the defendants was in fact obscene, judged by its contents, it would not become any less so because other book dealers were selling it, or the public library had copies of it, or literary critics praised it as a work of literary merit, or because other books equally bad were being openly sold. (See
 
 Commonwealths. Isenstadt, supra,
 
 at pp. 846, 848, 849 of 62 N.E.2d for discussion of some of these matters.) The fact that a book has literary merit does not prevent it from being obscene, if otherwise it has that character.
 
 (Halsey
 
 v.
 
 New York Soc. for Suppression of Vice
 
 (1922), 234 N.Y. 1 [136 N.E. 219];
 
 Commonwealth
 
 v.
 
 Buckley
 
 (1909), 200 Mass. 346 [86 N.E. 910, 128 Am.St.Rep. 425, 22 L.R.A.N.S. 225].) It does not appear that the critics whose opinions were offered
 
 *891
 
 discussed the question of obscenity, but if they had done so it would have been proper to exclude the opinions because this was the very issue to be decided by the jury. (32 C.J.S. 74;
 
 Gardenswartz
 
 v.
 
 Equitable etc. Soc.
 
 (1937), 23 Cal.App.2d Supp. 745, 753 [68 P.2d 322];
 
 People
 
 v.
 
 Crossan
 
 (1927), 87 Cal.App. 5, 16 [261 P. 531].)”
 

 In
 
 People
 
 v.
 
 Smith
 
 (1958), 161 Cal.App.2d Supp. 860 [327 P.2d 636], this court said at page 863, “The defendant offered expert witnesses to testify what psychological effect the prurient material in question would have on a normal average person. In California, this is no more the subject of expert testimony than what the conduct of a reasonable and prudent person would be in a negligence action. This is for the trier of the fact.” This judgment was reversed in
 
 Smith
 
 v.
 
 California
 
 (1959), 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205], but on the ground that the city ordinance under which Smith was convicted did not require proof of
 
 scienter
 
 and was, therefore, unconstitutional. In
 
 People
 
 v.
 
 Pickwick Book Shop
 
 (1947), our Crim. A. 2314, this court approved the following instruction to the jury, “You are instructed that the question of whether or not contemporaneous literature is obscene or indecent is a matter of such common knowledge that it does not require the testimony of experts to pronounce upon it, it is a question which falls within the range of ordinary intelligence; you as jurors are required in this ease to determine whether or not the book which has been marked in evidence in this ease is obscene or indecent, you are the sole judges of that question.” It is obvious that this court has repeatedly held that such opinion evidence of experts is not admissible on the question of obscenity. This is consistent with the fundamental rule that an expert may testify as to “his opinion on a question of science, art, or trade, when he is skilled therein” (Code Civ. Proc., § 1870, subsec. 9). Opinions as to whether a book is obscene do not come within any part of this provision. A literary critic might testify that as a matter of art a book was well written but this does not prove it was or was not obscene. Even an obscene book may be well written. This was fully discussed in
 
 People
 
 v.
 
 Wepplo, supra,
 
 at page 962. “ [T]he test [as to admissibility of expert testimony] is whether the ease is one outside the common experience of men so that a person with superior, knowledge because of training and experience is better able to reach a conclusion from the facts.”
 
 Reynolds
 
 
 *892
 
 v.
 
 Natural Gas Equipment, Inc.
 
 (1960), 184 Cal.App.2d 724, 739 [7 Cal.Rptr. 879]. All we have said about the non-admissibility of expert opinions as to obscenity applies with equal force to evidence as to community standards. The jurors must decide this, not from their own likes and dislikes, but from their knowledge of contemporary community standards.
 

 We are fully aware that Mr. Justice Frankfurter in
 
 Smith
 
 v.
 
 California, supra
 
 (1959), 361 U.S. 147, 164-165 [80 S.Ct. 215, 4 L.Ed.2d 205, 217-218], in a concurring opinion states with considerable force that expert testimony is admissible on the issues of obscenity and comparative community standards. Mr. Justice Harlan (pp. 221-222 [4 L.Ed.2d]) (U.S. pp. 171-172) took a somewhat similar view. The court did not support the views of these justices on these points. Consequently, they are not the law as yet. With all respect to these learned justices, it is important that we give a clear statement of the rule as it presently stands in order that trial courts whose appeals come before us may know what to expect from us. We shall, for the present, follow the rule we announced in our above decisions. Even if the Frankfurter view of evidence of expert opinion on obscenity and contemporary community standards were the law, the evidence offered and rejected in this case would not be admissible.
 

 IV. Scienter
 

 Under Penal Code, section 311, subsection 3, the prosecution must prove, and, in the case at bar, did prove,
 
 “scienter”
 
 on the part of the defendant. This does not mean that the People must prove that the defendant considered the books obscene.
 
 Scienter
 
 is knowledge of the contents of the books.
 
 (Smith
 
 v.
 
 California, supra
 
 (1959), 361 U.S. 147 [80 S.Ct. 215, 4 L.Ed.2d 205].) That ease holds invalid Los Angeles city ordinance, section 41.01.1, which makes it a misdemeanor for a bookseller to have in his possession any obscene writing, etc., in any place of business where books are sold, on the ground that the ordinance does not require
 
 scienter
 
 on the part of the defendant and that the lack of
 
 scienter
 
 was an infringement of the constitutional right of freedom of the press and speech. At page 208 L.Ed. (U.S. p. 149), “The definition [in the ordinance] included no element of scienter
 
 —knowledge hy appellant of the contents of the hook.”
 
 (Emphasis added.) At pages 211-212 [L.Ed] (U.S. p. 154), “It. is argued that unless the scienter requirement is dispensed
 
 *893
 
 with, regulation of the distribution of obscene material will be ineffective, as booksellers will falsely disclaim knowledge of their books’ contents or falsely deny reason to suspect their obscenity. We might observe that it has been some time now since the law viewed itself as impotent to explore the actual state of a man’s mind. See Pound,
 
 The Role of the Will in Law,
 
 68 Harv.L.Rev. 1.
 
 Cf. American Communications Assn.
 
 v.
 
 Douds,
 
 339 U.S. 382, 411 [70 S.Ct. 674, 94 L.Ed. 925, 950], Eyewitness testimony of a bookseller’s perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial.” Concurring opinion of Black, at page 213 (U.S. 156), “The Court’s opinion correctly points out how little extra burden will be imposed on prosecutors by requiring proof that a bookseller was aware of the book’s contents when he possessed it. ’ ’ Most of what was said by Mr. Chief Justice Warren on this subject, in his concurring opinion in the Both and Alberts cases, is pertinent here (354 U.S. at p. 495, 1 L.Ed.2d at p. 1513): “The defendants in both these cases were engaged in the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers. They were plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. I believe that the State and Federal Governments can constitutionally punish such conduct. That is all that these eases present to us, and that is all we need to decide.”
 

 In the case at bar, a sign and approximately 75 per cent to 90 per cent of the books contained in the book store were received in evidence on the sole issue of intent. While such evidence of course does not establish that defendant knew the contents of the two subject books in the sense that he had read them, it does tend to establish
 
 scienter
 
 within the requirements of
 
 Smith
 
 v.
 
 California, supra
 
 (1959), 361 U.S, 147 [80 S.Ct. 215, 4 L.Ed.2d 205], and does tend to establish that the acts were done wilfully and lewdly as required by section 311, Penal Code. It also tends to prove the kind of book selling in which appellant was engaged, all of which has a bearing on
 
 scienter.
 

 Mr. Justice Frankfurter, in
 
 Smith
 
 v.
 
 California, supra,
 
 says at page 217 (U.S. p. 164), “Accordingly, the proof of scienter that is required to make prosecutions for obscenity consti
 
 *894
 
 tutional cannot be of a nature to nullify for all practical purposes the power of the State to deal with obscenity. Out of regard for the State’s interest, the Court suggests an unguiding, vague standard for establishing ‘awareness’ by the bookseller of the contents of a challenged book in contradiction of disclaimer of knowledge of its contents. A bookseller may, of course, be well aware of the nature of a book and its appeal without having opened its cover, or, in any true sense, having knowledge of the book. As a practical matter therefore the exercise of the constitutional right of a State to regulate obscenity will carry with it some hazard to the dissemination by a bookseller of non-obseene literature. Such difficulties or hazards are inherent in many domains of the law for the simple reason that law cannot avail itself of factors ascertained quantitatively or even wholly impersonally.”
 

 Y. Whether a Book Is Obscene Is a Question op Fact
 

 At page 1510 L.Ed (U.S. p. 490) of the Roth case
 
 (Roth
 
 v.
 
 United States, supra
 
 (1957), 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498]), this instruction was approved, ‘‘In this case, ladies and gentlemen of the jury, you and you alone are the exclusive judges of what the common conscience of the community is, and in determining that conscience you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious— men, women and children.” This, from the majority opinion, completely disapproves the dissenting opinion of Mr. Justice Harlan on the point. At page 1514 [L.Ed] (U.S. p. 497) he said, ‘ ‘ Since those standards do not readily lend themselves to generalized definitions, the constitutional problem in the last analysis becomes one of particularized judgments which appellate courts must make for themselves. I do not think that reviewing courts can escape this responsibility by saying that the trier of the facts, be it a jury or a judge, has labeled the questioned matter as ‘obscene,’ for, if ‘obscenity’ is to be suppressed, the question whether a particular work is of that character involves not really an issue of fact but a question of constitutional
 
 judgment
 
 of the most sensitive and delicate kind.” (Emphasis by the court.) We hold that, if the contents of the book could not support an implied finding that it is obscene, the question is for the court, but if it could support such a finding, the question is for the jury as in any other ease where there is an issue of fact.
 

 
 *895
 
 VI. There Is Evidence From Which the Trier op the Facts Could Find the Books Obscene
 

 Although we have considered the two books in full, it would be a waste of time for us to discuss the contents of the books and might serve only to advertise them, so we will content ourselves with the statement in the foregoing heading.
 

 VII. Jury Instructions
 

 The trial court adequately instructed the jury on the principles of law stated above. It was not error to reject numerous additional instructions requested by defendant, many of which were repetitious.
 

 VIII. Search and Seizure
 

 Holding that the evidence was proper and material also disposes of the issue of illegal search and siezure. Unlike the ordinary case, there need be no justification here for the search (it being a public place) but only for the seizure. The search being proper, the materiality of the evidence justifies the seizure as an incident to the lawful arrest.
 

 The judgment is affirmed.
 

 Huls, J., and Smith, J., concurred.
 

 The petition of appellant for a rehearing was denied May 16, 1961, and the following opinion was then rendered:
 

 SWAIN, P. J.
 

 We have considered all the points raised by the petition for rehearing and have also considered the opinion of the California Supreme Court filed May 11, 1961, in
 
 Aday
 
 v.
 
 Superior Court,
 
 55 Cal.2d 789 [13 Cal.Rptr. 415, 362 P.2d 47]. It would serve no useful purpose for us to discuss the points raised in the petition for our decision remains the same. The Aday ease, supra, deals with a writ of mandamus to compel items seized under a search warrant to be returned to the court which issued it in order that the latter court may hear a motion under Penal Code, sections 1539 and 1540, for the return of the items seized. The Supreme Court ordered that items not named in the search warrant be returned to the court. It did not even decide whether those items had been improperly seized. Our problem is to decide whether the books comprising Exhibit Number 4 (i.e., books seized as an incident to a lawful arrest but not named in the complaint) were admissible in evidence. The Aday case does not solve that problem for us. Appellant
 
 *896
 
 would seem to get comfort from this statement in that case, “In view of their contents [i.e., the contents of the hooks specifically named in the warrant] it was not necessary for Judge Eymann [the judge who issued the search warrant] to read the books in their entirety or
 
 receive evidence as to contemporary community standards
 
 in order to determine the issue of probable cause.” (P. 798; emphasis added.) This is not a holding that it is error for a trial judge to exclude evidence as to contemporary community standards. Should application be made to our Supreme Court for a writ of habeas corpus based on the case at bar and should that court decide it was error to exclude such evidence, we would, for the first time, have authority for departing from the rule of evidence long adhered to by this court. '
 

 Huls, J., and Smith, J., concurred.