[Crim. No. 6962. In Bank. Nov. 22, 1961.]

In re ALBERT J. HARRIS on Habeas Corpus.

Hugh R. Manes, Brock & Fleishman and Stanley Fleishman for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and Wm. E. Doran, Deputy City Attorney, for Respondent.

McCOMB, J.—Petition for a writ of habeas corpus.

Petitioner's salesman was arrested, without a warrant, for selling obscene books in violation of section 311, subdivision 3, of the Penal Code.

Incident to the arrest, virtually all the "books, magazines, writings, publications and papers" in petitioner's bookstore were seized. Petitioner was thereafter charged in two counts with selling two specific books in violation of section 311, subdivision 3, of the Penal Code.

At his trial all the material which had been seized was introduced into evidence for the purpose of showing "intent or notice."

Petitioner offered evidence that the books sold were not, according to contemporary community standards, obscene. The evidence consisted of expert testimony, comparable writings and pictures adjudged in Los Angeles County to be not obscene, and comparable writings and publications purchased in the community. All the offered evidence was excluded by the trial court. Petitioner contended before the trial court, and contends here, that he was thus denied due process of law.

 This is the sole question necessary for us to determine: *Was it a denial of due process for the trial court not to allow defendant to prove contemporary community standards?*

*Yes.* The standard for judging obscenity adequate to withstand the charge of constitutional infirmity is whether to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest. (*Roth* v. *United States,* 354 U.S. 476, 489 [77 S.Ct. 1304, 1 L.Ed.2d 1498]; *Aday* v. *Superior Court,* 55 Cal.2d 789, 797 [5] [13 Cal.Rptr. 415, 362 P.2d 47]; *cf. Smith* v. *California,* 361 U.S. 147, 165 [80 S.Ct. 215, 4 L.Ed.2d 205]; *Grove Press, Inc.* v. *Christenberry,* 175 F.Supp. 488, 502; Lockhart and McClure, *Censorship of Obscenity,* 45 Minn.L.Rev. 5, 98; Lockhart and McClure, *Literature, the Law of Obscenity, and the Constitution,* 38 Minn.L.Rev. 295, 348.)

Under the foregoing rule, the trial court's ruling denied petitioner due process of law.

In view of our conclusions, it is unnecessary to discuss other arguments made by counsel.

Petitioner is ordered discharged from custody.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

TRAYNOR, J.—I concur, but deem it appropriate to consider an additional ground on which petitioner attacks the judgment against him.

Incident to the arrest of his codefendant, a salesman in petitioner's bookstore, between 75 and 90 per cent of all the books, magazines, writings, publications, and papers in the bookstore were seized by the police. All of this material was introduced in evidence at petitioner's trial to prove "intent or notice" with respect to the two books on which the charges of violating subdivision 3 of Penal Code section 311 were based.

Petitioner contends that this evidence was seized in violation of the First and Fourth Amendments to the Constitution of the United States as made applicable to the states through the due process clause of the Fourteenth Amendment and that under the recent decision of the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081], the trial court was constitutionally compelled to exclude this evidence at his trial. He concludes that since its use against him constituted a denial of due process, he may collaterally attack the judgment on habeas corpus. This question is squarely presented in this case, and if the constitutionality of the seizure may properly be considered on habeas corpus, it should be determined now for the guidance of the trial court in the event petitioner is retried. (See *In re Newbern,* 53 Cal.2d 786, 792 [350 P.2d 116]; *In re Dal Porte,* 198 Cal. 216, 220 [244 P. 355]; *cf.,* Code Civ. Proc., § 53.)

When this court adopted the exclusionary rule we pointed out that "It bears emphasis that in the absence of a holding by the United States Supreme Court that the due process clause requires exclusion of unconstitutionally obtained evidence, whatever rule we adopt, whether it excludes or admits the evidence, will be a judicially declared rule of evidence." (*People* v. *Cahan,* 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R. 2d 513].) Moreover, as we then analyzed the relevant decisions of the United States Supreme Court, we concluded that Mr. Justice Black was correct in stating that "the federal exclusionary rule is not a command of the Fourth Amendment but is a judicially created rule of evidence which Congress might negate." (Concurring opinion in *Wolf* v. *Colorado,* 338 U.S. 25, 39-40 [69 S.Ct. 1359, 93 L.Ed. 1782]; see *People* v. *Cahan, supra,* 44 Cal.2d 434, 439-440.) In *Mapp* v. *Ohio, supra,* 81 S.Ct. 1684, however, the United States Supreme Court overruled the *Wolf* case and held "that all evidence obtained by searches and seizures in violation of the Constitution is, by the same authority, inadmissible in a state court." (81 S.Ct. at p. 1691.) It also pointed out that

the federal exclusionary rule had been constitutionally compelled since its inception in *Weeks* v. *United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B 834]. (81 S.Ct. at pp. 1687-1688.) Thus, neither we, in reviewing state court convictions, nor the federal courts, in reviewing federal convictions, may refuse to entertain a collateral attack on a conviction secured by the use of unconstitutionally obtained evidence on the ground that such use constitutes no more than the violation of a rule of evidence. (See *In re Leyva*, 136 Cal. App.2d 750 [289 P.2d 271].) On the other hand, the United States Supreme Court has not held that because such use in itself violates the Constitution, it may be reached on collateral attack, and in the *Mapp* case it pointed out that "As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected." (Fn. 9, 81 S.Ct. at p. 1693.) Thus, we must look further to determine whether petitioner may challenge the constitutionality of the use of the evidence seized from his bookstore on habeas corpus.

In *In re Dixon*, 41 Cal.2d 756 [264 P.2d 513], we held that alleged denials of even constitutional rights in the admission of evidence could not be reached on habeas corpus when the issue had been presented to the trial court on conflicting evidence and no appeal had been taken or adequate excuse offered for failing to appeal. We stated: "We must consider whether, regardless of the lack of a satisfactory excuse for the failure to appeal, we may properly pass upon petitioner's claims relating to forced confession and unlawful search and seizure. Petitioner argues that a failure to appeal will not prevent a resort to habeas corpus when, as here, fundamental constitutional rights are involved. His contentions, however, depend entirely on his version of what occurred, and, as we shall see, there was ample evidence from which the trial court could have found that there was no violation of his rights. It is, of course, an established rule that habeas corpus may not be used instead of an appeal to review determinations of fact made upon conflicting evidence after a fair trial. [Citations.] Likewise, the writ is not available to correct errors or irregularities relating to ascertainment of the facts when such errors could and should have been raised by appeal. [Citations.] The same principles should apply even though the alleged errors involving factual issues relate to an asserted denial of constitutional rights. [Citation.] It would obviously

be improper to permit a collateral attack because of claimed errors in the determination of the facts after expiration of the time for appeal when evidence may have disappeared and witnesses may have become unavailable." (41 Cal.2d at pp. 760-761.)

In the present case, however, petitioner has exhausted his remedy by appeal (see *People* v. *Harris*, 192 Cal.App.2d Supp. 887 [13 Cal.Rptr. 642]), and he contends that the record establishes as a matter of law that the seizure of evidence from his bookstore was unconstitutional.[1] Under these circumstances he asserts that the *Dixon* case itself indicates that habeas corpus is available, and he points out that under similar circumstances, habeas corpus would be available in a United States district court to challenge a state's use of an involuntary confession. (*Rogers* v. *Richmond*, 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760] ; *Leyra* v. *Denno*, 347 U.S. 556 [74 S.Ct. 716, 98 L.Ed. 948].)

If the violation of a petitioner's constitutional rights by the use of illegally seized evidence had any bearing on the issue of his guilt, there should be no doubt that habeas corpus would be available. Unlike the denial of the right to counsel, the knowing use of perjured testimony or suppression of evidence, the use of an involuntary confession, or as in this case, the denial of an opportunity to present a defense, the use of illegally seized evidence carries with it no risk of convicting an innocent person. The purpose of the exclusionary rule is not to prevent the conviction of the innocent, but to deter unconstitutional methods of law enforcement. (*Elkins* v. *United States*, 364 U.S. 206, 217 [80 S.Ct. 1437, 4 L.Ed.2d 1669] ; *Walder* v. *United States*, 347 U.S. 62, 64-65 [74 S.Ct.

---

[1]This contention is correct. Whatever the limitations on the seizure of evidence incident to a lawful arrest may be in other contexts (see generally, *Abel* v. *United States*, 362 U.S. 217, 234-235 [80 S.Ct. 683, 4 L.Ed.2d 668], and cases cited), neither an arrest nor a search warrant can vest an officer with discretion to interfere with the distribution of constitutionally protected publications to the extent that occurred here. (*Marcus* v. *Search Warrants of Property, etc., Mo.*, 367 U.S. 717 [81 S.Ct. 1708, 1716-1717, 6 L.Ed.2d 1127].) Even if a seizure of representative samples of petitioner's nonobscene publications dealing with sex would have been reasonable to provide evidence of the general character of his business, it was wholly unnecessary to seize 75 to 90 per cent of the contents of the store including many publications that did not deal with sex at all. Such a seizure suggests, at least, that its purpose was not to secure evidence of "intent or notice" with respect to the two specific publications alleged to be obscene, but to punish petitioner for his alleged crimes without a trial by putting him out of business. Neither that punishment nor the procedure followed is a permissible means of enforcing Penal Code section 311.

354, 98 L.Ed. 503]; *Mapp* v. *Ohio, supra,* 81 S.Ct. 1684, 1688; *People* v. *Cahan, supra,* 44 Cal.2d 434, 443, 445; *People* v. *Martin,* 45 Cal.2d 755, 760 [290 P.2d 855].) That purpose is adequately served when a state provides an orderly procedure for raising the question of illegally obtained evidence at or before trial and on appeal. The risk that the deterrent effect of the rule will be compromised by an occasional erroneous decision refusing to apply it is far outweighed by the disruption of the orderly administration of justice that would ensue if the issue could be relitigated over and over again on collateral attack.

Even if we were to limit the area of collateral attack to cases in which the facts were not disputed or to require that the facts be determined from the record on appeal viewing the evidence in the light most favorable to the prosecution, repetitious attacks on final judgments would not be eliminated. The law of search and seizure has not been static. The United States Supreme Court has only recently relaxed the requirements of standing to challenge the use of illegally obtained evidence (*Jones* v. *United States,* 362 U.S. 257, 261-267 [80 S.Ct. 725, 4 L.Ed.2d 697]; *cf., People* v. *Martin, supra,* 45 Cal.2d 755, 759-761) and abandoned the rule that evidence illegally seized by state officers is admissible in federal courts. (*Elkins* v. *United States, supra,* 364 U.S. 206.) If collateral attack was permissible, such changes would invite fresh attacks on final judgments affirmed on appeal under the preexisting rules or on judgments from which appeals were excusably not taken in view of the apparent state of the law. Moreover, if such changes reflected refinements and improvements in constitutional law that went to the correct determination of guilt itself, one would indeed be reluctant to deny their benefits to persons claiming that they had been convicted of crimes they did not commit through the denial of rights now determined to be of constitutional magnitude. Such changes, however, like the exclusionary rule itself have no bearing on the issue of guilt, and it is therefore easily understandable why the lower federal courts have consistently adhered to the rule that the question of unconstitutionally seized evidence may not be raised on collateral attack. (*United States* v. *Zavada,* 291 F.2d 189, 191; *Jones* v. *Attorney General of the United States,* 278 F.2d 699, 701; *Alexander* v. *United States,* 290 F.2d 252, 254; *Plummer* v. *United States,* 260 F.2d 729, 730; *Wilkins* v. *United States,* 103 App.D.C. 322 [258 F.2d 416]; *United States* v. *Scales,* 249 F.2d 368, 370; *Barber* v. *United*

*States,* 197 F.2d 815; *Fowler* v. *Hunter,* 164 F.2d 668, 669-670; *Fowler* v. *Gill,* 156 F.2d 565, 566; *Graham* v. *Squier,* 132 F.2d 681, 684-685; *Price* v. *Johnston,* 125 F.2d 806, 811; *Taylor* v. *Hudspeth,* 113 F.2d 825, 826.)

Enforcing constitutional rights for the purpose of regulating law enforcement activities is different from enforcing them for the purpose of correctly determining a defendant's guilt or innocence, as we recognized in another context in determining when an informer's identity must be disclosed. Thus, when it appears "that the informer is a material witness on the issue of guilt and the accused seeks disclosure on cross-examination, the People must either disclose his identity or incur a dismissal." (*People* v. *McShann,* 50 Cal.2d 802, 808 [330 P.2d 33].) If, however, the informer is not a witness on the issue of guilt, but has only provided information to justify an arrest, his identity need not be disclosed if the police had sufficient additional evidence to justify the arrest (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 816-817 [330 P.2d 39]) or used the information provided by the informer to secure a valid warrant. (*People* v. *Keener,* 55 Cal.2d 714, 722-723 [12 Cal.Rptr. 859, 361 P.2d 587].) As we pointed out in the *Priestly* case the policy conflict when the informer is a witness on the issue of guilt is "between the encouragement of the free flow of information to law enforcement officials and the right of the defendant to make a full and fair defense on the issue of guilt." When, however, the communications of the informer are only relevant to the issue of reasonable cause to make an arrest and search, "the policy conflict is between the encouragement of the free flow of information to law enforcement officers and the policy to discourage lawless enforcement of the law." (50 Cal.2d at p. 816.) In the present case the conflict is between the policy in favor of finality of judgments and the policy to discourage lawless enforcement of the law. Since the latter policy may be adequately protected at trial and on appeal, it need not be further promoted by destroying the finality of judgments.

This resolution of the conflicting policies is not precluded by the decisions of the United States Supreme Court holding that a state conviction may be attacked on habeas corpus in the federal courts on the ground that an involuntary confession was introduced in evidence, even though that issue had been fully litigated and determined adversely to the petitioner in the state courts. (See *Rogers* v. *Richmond, supra,* 81 S.Ct. 735; *Leyra* v. *Denno, supra,* 347 U.S. 556.) It is true

that involuntary confessions are excluded under the due process clause, not because they are unreliable, but because they are "the product of constitutionally impermissible methods in their inducement." (*Rogers* v. *Richmond, supra,* at p. 740.) In *People* v. *Cahan* we noted the apparent inconsistency under the *Wolf* case in permitting states to use illegally seized evidence but forbidding them from using involuntary confessions even if shown to be reliable. We also stated that "The difference in treatment of these two problems may arise from the fact that ordinarily coerced confessions are associated with physical coercion against the defendant's person. This element is usually not present in cases of unreasonable searches and seizures (but see *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]) which may involve only minor intrusions of privacy or result from good-faith mistakes of judgment on the part of police officers." (44 Cal.2d at p. 442, fn.) Any inconsistency has now been eliminated by the *Mapp* case insofar as direct attack by appeal on a judgment of conviction is concerned, and it may be doubtful whether the reasons we suggested for the former distinction would alone justify retaining it for collateral attack. There is another reason, however, for distinguishing between involuntary confessions and illegally seized evidence on collateral attack. Thus, even though involuntary confessions are not constitutionally excluded because they are unreliable, the fact remains that often they are unreliable. If an unreliable involuntary confession has been used against a defendant in violation of his constitutional rights, habeas corpus should lie, for the constitutional violation is directly related to the determination of the issue of guilt. To draw a distinction between reliable and unreliable involuntary confessions on collateral attack, however, would compel the development of two tests for judging confessions, one to be applied on direct attack and the other to be applied on collateral attack. The avoidance of such complications justifies treating all involuntary confessions alike and permitting their use to be challenged on both direct and collateral attack. Illegally seized evidence, on the contrary, is not made unreliable by the illegality of its seizure, and accordingly, to permit collateral attack because of its use would be justified only to deter unlawful police conduct. The right to challenge police conduct at the trial and on appeal is sufficient for that purpose.