Opinion
DOWDS, J.
We granted rehearing in this matter to further consider the issues presented. We are satisfied that our opinion previously filed on April 4, 1979, correctly states the facts and law and hence order it refiled as follows:
Defendant appeals his conviction of possession of an allegedly obscene film entitled “Swedish Erotica No. 17” in violation of Penal Code section 311.2. We determine that the trial court erroneously excluded evidence offered by the defendant to attempt to prove that comparable materials were receiving public acceptance in the community during the relevant *Supp. 3 period of time. Such exclusion prejudiciously restricted defendant’s right to a fair trial.
During the cross-examination of the People’s expert witness, in the course of an argument over an objection to a question he had asked the witness respecting the film “Deep Throat,” defense counsel said: “I am going to show them [the jury] ‘Deep Throat.’ We are going to show ‘Deep Throat’ now and ask him his opinion on it ... . We will make an offer that this film, ‘Deep Throat,’ has been playing in the community for years and that along with ‘Devil in Miss Jones’ and ‘Behind the Green Door’ deals with anal intercourse, oral copulation, ejaculation. Those films have been playing in the community for years and we will offer to put these films in evidence and show the jury those films.”
A dialogue with the court ensued in which the court indicated that a judicial determination that another film was not obscene would not necessarily be relevant to the determination of the obscenity of the film in question in the current trial. Defense counsel continued: “We are not going to put into evidence that these films have been found obscene or not obscene. That is not the point. We are not going to have any testimony to show whether they are obscene or not obscene. That would perhaps be improper because it would be telling this jury what some other jury found and, as Mr. Dunn [the prosecutor] points out, they may have been found not guilty for some reason other than obscenity. We are not offering them for that purpose. We are offering them to show availability in the community, accessibility in the community, insofar as it goes to the community standard issue to show what was available. In fact, there is a jury instruction exactly on that point that says evidence of other materials may be considered by the jury in determining what the community standard was, although it is not obligated to accept it, so the standard CALJIC instruction contemplates the introduction of comparable materials—not for the reason suggested in the Hamling case, because that would be improper—but just to show the materials were available. We are not going to get into any collateral issues as to whether these materials were found obscene or not, because that would not be appropriate, but generally whether they were available in the community. That is a separate issue.” Defense counsel later continued: “I do not mean to say, your Honor, that the availability of similar material automatically establishes the community standard. Mr. Dunn is certainly free to argue that people should not be able to alter the community standard by glutting the market. That would be a matter for argument, or perhaps other evidence, but we have to be able to somehow show what *Supp. 4 the community standard was, because that is in issue and an element in the case. The only way to do that is to show whether materials were available for sale and for view in the community, and maybe that some of the jurors have seen some of the films . . . .”
A colloquy then ensued between the court and defense counsel as to whether the evidence was admissible under In Re Harris (1961) 56 Cal.2d 879 [16 Cal.Rptr. 889, 366 P.2d 305], the court stating: “I think the Harris case has been substantially watered down by the Hamling matter.” (Hamling v. United States (1974) 418 U.S. 87 [41 L.Ed.2d 590, 94 S.Ct. 2887].) The court then ruled: “You may present evidence as the People have done [apparently referring to expert testimony] but the objection will be sustained so you will not show ‘Deep Throat.’ You will not show ‘Behind the Green Door.’ You will not show ‘The Devil in Miss Jones,’ et cetera.” Defense counsel then made an offer of proof as follows: “If given the opportunity we would offer to prove that motion pictures similar to ‘Swedish Erotica No. 17,’ including but not limited to ‘Deep Throat,’ ‘Devil in Miss Jones’ and ‘Behind the Green Door,’ were readily available for adults to view throughout 1974, and that those films depict anal intercourse, ejaculation, oral copulation and other activities portrayed by ‘Swedish Erotica No. 17.’ We would not attempt to introduce lots of material, but we at least want to be able to introduce some films. We would also offer to prove that those films grossed in 1974 millions and millions of dollars and were attended by millions and millions of people throughout the State of California. We don’t submit that that automatically establishes the community standard but that it is some evidence of what it was in 1974. But if the court is ruling we cannot do it, I will not mention it any further and I don’t want my failure to bring it up again to be construed as a withdrawal of our position, but only an agreement that the court has the last word.”
The following colloquy then ensued:
The Court: “You have made your record absolutely clear and I will again cite In Re Harris 56 Cal.2d; Hamling v. United States 418 U.S. 87, 41 Lawyers Edition 2d 590, and 352 of the Evidence Code that any probative value that may exist—and I don’t think it does exist under Hamling—would be outweighed by prejudicial effect.”
Mr. Diamond [defense counsel]: “Also in case this case ever goes to the U.S. Supreme Court, we don’t give up our right to argue that it would *Supp. 5 also violate the due process clause of the Fourteenth Amendment, so we have raised our federal issue at the earliest state possible.”
The Court: “I will recite Hamling again for my ruling. The objection is sustained. All right, we can proceed for awhile here. Let us have the jury back.”
Mr. Diamond: “So I can’t ask this witness any more questions about ‘Deep Throat?’ ”
The Court: “That’s correct.”
While the court in one place gave lip service to exercising its discretion under section 352 of the Evidence Code, it is apparent from the foregoing quotations and from the record as a whole that the trial court thought the rule of In re Harris, 56 Cal.2d 880 [16 Cal.Rptr. 889, 366 P.2d 305], (that it was a denial of due process for the trial court in an obscenity case to preclude defendant from offering evidence of contemporary community standards), had in some manner been overruled by Hamling v. United States, supra, 418 U.S. 87. In the Hamling case, involving an allegedly obscene advertising brochure, defendants offered into evidence (1) materials which had received second-class mailing privileges, (2) materials which had previously been the subject of litigation and been found to be “constitutionally protected” and (3) materials openly available on the newsstand. The trial court, after examining the materials, refused to admit them into evidence on the grounds that “ ‘they tend to confuse the jury’ and ‘would serve no probative value in comparison to the amount of confusion and deluge of material that would result therefrom.’ ” (Id., at p. 125 [41 L.Ed.2d at p. 625].) The Supreme Court stated: “The defendant in an obscenity prosecution, just as a defendant in any other prosecution, is entitled to an opportunity to adduce relevant, competent evidence bearing on the issues to be tried. But the availability of similar materials on the newsstands of the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating. As stated by the Court of Appeals, the mere fact that materials similar to the brochure in question ‘are for sale and purchased at book stores around the country does not make them witnesses of virtue.’ ” (Id., at pp. 125-126 [41 L.Ed.2d at p. 625].) The Hamling court further stated: “Much of the material offered by petitioners was not of demonstrated relevance to the issues in this case. Such of it as may have been clearly relevant was subject to the District Court’s observation that it would tend to create *Supp. 6 more confusion than enlightenment in the minds of the jury, and to the court’s expressed willingness to permit the same material to be treated in the testimony of expert witnesses. The District Court retains considerable latitude even with admittedly relevant evidence in rejecting that which is cumulative and in requiring that which is to be brought to the jury’s attention to be done so in a manner least likely to confuse that body. We agree with the Court of Appeals that the District Court’s discretion was not abused.” (Id., at p. 127 [41 L.Ed.2d at p. 626].)
In the instant case, the offer of proof related to three specific films which were alleged to depict sexual acts comparable to those included in the film in question. The offer of proof further related that the films had been seen by millions of persons and had grossed millions of dollars during the relevant period. The evidence was not offered except to show what was acceptable under contemporary community standards in the period in question. It was certainly relevant to that issue and we do not believe Hamling holds to the contrary. Nowhere in Hamling is it stated that comparable materials are not relevant or are inadmissible on the issue of community standards. To the extent the trial court purported to exercise its discretion under Evidence Code section 352, we believe it abused that discretion. While the trial court might properly under that section have limited the quantity of allegedly comparable material to be shown to the jury, to require proof prior to the exhibition of the films of a quantum of public acceptance in the community, to require the contents of the film to be proved to the jury by lapsed time photography or in some manner other than by displaying the entire film, its ruling that defense counsel could not ask questions about “Deep Throat” and that he was limited to offering expert testimony as to community standards was an abuse of discretion. Unlike the situation in Hamling, where the defendant’s four expert witnesses testified on the issue of community standards, defendant herein had no other evidence of those standards and thus his offered evidence was not cumulative. There was, in addition, no claim that his evidence would have confused the issues or been misleading to the jury. The court’s recitation of “prejudicial effect” appears unsupported. The fact that People v. Enskat (1973) 33 Cal.App.3d 900, 913 [109 Cal.Rptr. 433] holds that in certain circumstances expert testimony is not required to prove community standards buttresses our view.
The trial court refused to instruct the jury in the words of CALJIC No. 16.193, relating to evidence that matter allegedly similar and comparable to that in question is openly exhibited in the community, *Supp. 7 apparently in the belief that In re Harris, supra, has been overruled by Hamling v. United States, supra. As we have stated, we are not of that opinion and if, in any future trial, evidence of comparable materials available in the community is offered and received into evidence, CALJIC No. 16.193 should, if offered, be given. In the instant case the trial court modified CALJIC No. 16.195 to permit rather than to require the determination of contemporary standards from the opinions of expert witnesses, and we commend this practice. As pointed out in People v. Enskat, 33 Cal.App.3d at page 914, the enactment of Penal Code section 312.1 in effect repealed In re Giannini (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535] upon the basis of which CALJIC No. 16.195 was promulgated.
The other contentions raised by defendant will in all probability not arise on retrial and need not be discussed.
The judgment is reversed for further proceedings not inconsistent with this opinion.
Cole, P. J., and Saeta, J., concurred.